[No. 1158.]

## WILLIAM PHIPPS, et al., Appellants, v. THOMAS HULLY, Respondent.

Contract—Reduction of Ore—Assay Value—Battery Samples—Pleadings.—Action on contract for reduction of ores requiring payment to plaintiffs of "sixty-five per cent. of the assay value of said ores, such assay to be made from said ores taken from the battery samples" at defendant's mill. The answer denied that the battery samples were duly or properly made and averred "that either by fraud of plaintiffs * * * or mistake by defendant's employés, they failed to show the assay value of such ores," and set forth the true value of the ore: Held, that the averments in the answer raised an issue as to the terms of the contract and the correctness of the assays taken from the battery samples.

Idem—Construction of Contract:—Held, that by the terms of the contract the assays from the battery samples were to be taken as a means of ascertaining the value of the ore; that it was not the intention of the parties that they should be bound by the assays if they did not fairly represent the value of the ore, and that it was the true value of the pulp from the battery that was to be taken as a guide for the settlement.

Idem—Evidence:—*Held*, that evidence, independent of the contract and of the assays taken from the battery, was admissible which tended to show that assays from the battery samples were not correct and also tended to show what the true value of the ore was. (See opinion for character of evidence admitted.)

Immaterial Evidence—Effect of.—The court allowed testimony as to the value of ore in other places in the mine than that from which plaintiffs' ore was taken: *Held*, that the error, if any, was not of sufficient importance to justify a reversal of the judgment.

Appeal from the District Court of the First Judicial District, Storey County.

The returns of the assayer making the assays that were introduced in evidence, contained the following caution:

"It is perilous to trust any assay-report which is based upon a single assay, no matter how carefully or by whom made. No evidence is so satisfactory of the correctness of an assay report as the agreement of two proper assays of the same pulverized sample. All ore assays not specially otherwise ordered are understood to be of this character. When no interests are dependent, and when certainty as to the precision of a report is not important, a single assay may be sufficient. Ore samples from a distance (three ounces is a sufficient quantity) may be sent prepaid by mail or express. It is reasonable to look for agreements in assays from the same ore made by different assayers only when the sample has been previously pulverized and thoroughly mixed, after being sifted through the finest sieve. Pulp which has passed the first battery screens (as well as coarsely broken ore and tailings) may have a very deceptive sample sifted out of it. Parties who do not wish to be misled by assay-reports as to the value of their ores, pulp and tailings, should assure themselves that the assayer has faithfully operated upon a sample which truly represents the ore, and that he has not 'estimated' (guessed!) the gold contents, or assumed (without testing for it) that gold is not contained at all."

*M. N. Stone*, for Appellants:

I. The theory of the court, in disregarding the battery

assays, was palpably unsound if any force or effect whatever is to be given to the contract made by the parties.   Assays made from the battery samples at the mill were the only tests provided by the parties for determining the value of the ores received and reduced by respondent, and sixty-five per cent. of such assay value, and no other, was the amount agreed to be paid for the ore reduced, after deducting the discount and six dollars and fifty cents per ton for reduction. The parties knew that they were contracting with reference to property of uncertain and fluctuating value ; that some exclusive test should be adopted to protect appellants against any unfair or improper reduction of the ores at the mill, and that unless such test value was stipulated, the respondent and his mill employes being in the exclusive possession of the ores after delivery, would have it within his power to make any return to them he might see fit, of the value of the ore reduced.   If they are to be compelled to depend as decided by the court, upon respondent's good faith and fair dealing in milling the ores and to take the word of himself and his employes in respect to the amount and value of bullion produced, the agreement for the ascertainment of the value of the property by battery sample assays was useless and absurd.   It left them wholly without protection against his wrongful or fraudulent acts, or his improper or defective method of milling the ore.

II. The answer presents no defense to the cause of action. The contract, as claimed by appellants, is admitted by it, and no new matter is alleged in avoidance of the contract. To present any issue on the ground of fraud the facts and circumstances constituting the fraud or mistake should be set forth in the answer, and unless they are so set forth, proof to sustain such grounds of defense is inadmissible. When fraud is relied upon as a defense, a general allegation charging fraud will not suffice ; all the facts which the law requires as the elements of fraud, and all of which are claimed to be the constituents of the fraud in the particular case, must be alleged, and their absence may destroy the intended effect of the pleading, and shut out all evidence in

its support at the trial. (Pomeroy on Rem. sec. 687 and cases cited ; *Kent* v. *Snyder*, 30 Cal. 673 ; *Capuro* v. *Builders' Ins. Co.* 39 Cal., 124 ; *Chamberlain* v. *Stern*, 11 Nev. 271 ; *Butler* v. *Viele*, 44 Barb. 166 ; Kerr on Fraud, 365, 366 ; *Swope* v. *Fair*, 18 Ind. 300 ; *Horton* v. *Ruhling*, 3 Nev. 504 ; *Piercy* v. *Sabin*, 10 Cal. 26 ; *Jenkins* v. *Long*, 19 Ind. 28 ; *Ham* v. *Greve*, 34 Ind. 18 ; *Hale* v. *Walker*, 31 Iowa 344 ; *Wheeler* v. *Floral Mill Co.*, 9 Nev. 258 ; *Smith* v. *Owens*, 21 Cal. 11 ; *McComb* v. *Reed*, 28 Cal. 284.)

III. Respondent cannot rely upon the defense of mistake in taking the battery assays introduced in evidence in the cause. ( *Grimes* v. *Saunders*, 3 Otto (U. S.) 56 ; *Kinney* v. *Con. V. Co.*, 4 Sawyer 444 ; Kerr on Fr. and Mis. 432, 436 ; *People* v. *Supervisors*, 45 N. Y. 200 ; *S. & S. R. R. Co.* v. *Row*, 24 Wend. 74.

*W. E. F. Deal* and *B. C. Whitman* for Respondent :

I. There is no pretense that the ore was not carefully and faithfully worked ; no suggestion that there was any extraordinary loss in the milling. The question then is : shall the appellants hold respondent to the incorrect test of battery assay, and recover from him something which was never theirs? Unless the rules of law governing this case be procrustean, no such result can follow.

II. Contract is to be interpreted according to the ordinary use of language, and "the object of interpretation is simply to ascertain what the parties meant." (Bish. on Cont. sec. 609.)

By the Court, HAWLEY, C. J.:

This action was brought by plaintiffs to recover two thousand and ninety-five dollars and sixty cents alleged to be due from the defendant on a contract for reducing certain ores at defendant's mill. The contract, as averred in the complaint, required defendant to pay plaintiffs—after deducting six dollars and fifty cents per ton for expenses of reduction—"sixty-five per cent. of the assay value of said ores, such assay to be made from said

ores taken from the battery samples at said mill." It is alleged that the ascertained value of said ores, by the assays taken from the battery samples, was the sum of one hundred and thirty-four dollars per ton.

The defendant, in his answer, alleges that "he was to pay sixty-five per cent. of the battery sample assay, less six dollars and fifty cents for working, and less discount on the bullion produced." He avers that he reduced twenty tons of ore and "admits that battery samples of such workings were made," but denies that they were duly or properly made, and says "that either by fraud of plaintiff Cizovich, or mistake by defendant's employes, they failed to show the assay value of such ores." He "admits that such assays apparently showed the value of such ores or matter to be one hundred and thirty-four dollars per ton, but avers that the real value was not more than fourteen dollars and sixty cents per ton." He also avers "that the entire product of such ore,    *    *    *    by him carefully and properly worked at his mill, was no more than one hundred and eighty dollars."

The cause was tried before the court without a jury and judgment was rendered in favor of plaintiffs for two hundred and sixty-five dollars, or its equivalent in gold and silver bullion.

1. We are of opinion that the averments in the answer raised an issue as to the terms of the contract and also as to the correctness of the assays which were taken from the battery samples.

2. It was argued by plaintiffs that the assays taken from the battery samples were the only tests provided in the contract for determining the value of the ore, and hence that the court erred in admitting any other testimony for the purpose of establishing its value. By the terms of the contract the assays from the battery samples were to be taken as a means of ascertaining the value of the ore; but this was, of course, upon the understanding of the parties that the assays would be correct. It never was the intention of the parties that they should be bound by the assays

if they did not fairly represent the value of the ore.   The language of the averments in the pleadings, when interpreted with reference to the intention of the parties, is not susceptible of such a construction.   It was the true value of the pulp from the battery that was to be taken as a guide for the settlement.   Contracts of this character are presumed to be made with a view of protecting both parties. The owner of the ore is guaranteed a certain per cent. of its true value, which secures to him a fair return.   If the mill-owner is careful, and works the ore closely, he may be able to save more than the per cent. agreed upon, and thus secure to himself an additional profit for the working of the ore.   He also avoids the necessity of a clean-up for every small quantity of custom ore that he may work, and is thereby enabled to crush and reduce the ore at less expense than if the contract called for the bullion produced by the ore.   If the assays taken from the battery samples are correct, the parties are protected and bound by them whether the clean-up, if made, amounts to the percentage agreed upon or not.   But if the assays are not correct the parties are not bound by them, and may introduce any competent testimony tending to establish the true value of the ore.

3.   Upon the trial plaintiffs introduced two assays taken from the battery samples—one taken under the direction of the defendant of one hundred and thirty-four dollars and eighty-two cents per ton, the other taken under the direction of the plaintiff Cizovich, of one hundred and twenty-eight dollars per ton.   About half the ore had passed through the battery when the assay of one hundred and thirty-four dollars and eighty-two cents was obtained.   It is argued in behalf of plaintiffs that defendant was negligent in not then taking the necessary steps to secure himself by having other samples taken from the battery, and seeing that proper and correct assays were made therefrom, or in not refusing to reduce the balance of the ore unless the mistake in the assays taken was corrected in some manner that might be agreed upon between the parties.   It is also

claimed that the testimony introduced on the part of the defendant was incompetent to prove the real value of the ore, or to show that the assay value of the ore was less than shown by the assays taken from the battery samples. It would have been proper for the defendant to have pursued the course suggested, but it was not necessarily the only course to be pursued in order to ascertain the facts. The defendant seems to have used due diligence in notifying plaintiffs that something was wrong about the assays, and in endeavoring to find out what the true value of the ore was. He testified that after he ascertained from the assayer what the battery samples assayed he asked plaintiff Phipps for time to settle, "because the amalgam produced by the ore showed that the ore was not of the value that the assay of the battery samples showed." When he showed plaintiff Cizovich the assay, he told him "it was too high." Phipps said, "Hully informed me that the assays went one hundred and thirty-four dollars per ton, and he then expressed some surprise that it went so high, and asked whether I was not surprised; he also said that, if we were not in a hurry, he would like to have us wait until he could make a clean-up before making a settlement with us." It does not appear that either of the plaintiffs objected to waiting for the "clean-up." Neither of them requested that any other assays from the battery samples should be made. Both parties had an equal opportunity to correct the mistake in the battery sample assays, and to pursue any course necessary to preserve their respective rights. After the assay of one hundred and thirty-four dollars and eighty-two cents was made defendant took a pulp assay from the tank "because evidences were cropping out that the battery assays were too high." He testified that he told Cizovich after he received the battery sample assays that he "did not believe that the ore was of any such value, because the gold in the ore, as shown in the battery sample assays, predominated in so much greater proportion than the gold in the bullion which the ore produced, as shown by the assays taken from the tank." The pulp from the

tank assayed sixteen dollars and eighty-nine cents per ton.

The defendant worked two thousand seven hundred pounds of ore belonging to himself with plaintiffs' ore, and the entire clean-up at the mill, of all the ore, only produced a bar of bullion of the value of two hundred and sixty-five dollars. Bossell testified on behalf of defendant that he was an amalgamator by occupation, of fourteen years experience; that he had charge of the working and reduction of the ore; that it was properly worked; that he took as fair a sample as he could from the tanks; that the amalgam out of the pans "represented the entire product of the ore which plaintiffs sent to the mill;" that he "did not intend to clean up, but the difference between the assays from the battery and the assay from the tank was so peculiar that Mr. Hully told me to clean up;" that the sample taken "from the tank had the results of no other ore except plaintiffs';" and that he did not think it possible that they "could have made a loss in milling this ore of the difference between two hundred and sixty-five dollars and two thousand dollars." This testimony was competent, as it tended to show that the assays from the battery samples were not correct; and also tended to show what the true value of the ore was.

It is claimed that the court erred in allowing testimony as to the value of ore at other places in the St. John mine than that from which plaintiffs' ore was taken. We deem it unnecessary to decide whether this testimony was competent or not. It certainly was of but little, if any, value in determining the fact at issue, and it is apparent to us from the record that plaintiffs were not prejudiced by it, and that the judgment would have been the same if it had been excluded. The error, if any, is not of sufficient importance to justify a reversal of the judgment. (*Merle* v. *Mathews*, 26 Cal. 467; *Persons* v. *McKibben*, 5 Ind. 261; *Williamsburg City Ins. Co.* v. *Cary*, 83 Ill. 454; *Albin* v. *Kinney*, 96 Ill. 216.)

The judgment of the district court is affirmed.