United States Court of Appeals,

Fifth Circuit.

No. 93-7062.

SIERRA CLUB, LONE STAR CHAPTER, et al., Plaintiffs-Appellees,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant-Appellant.

June 8, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before JOLLY and DAVIS, Circuit Judges, and BRAMLETTE,[*] District Judge.

E. GRADY JOLLY, Circuit Judge:

approving the sale of an. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

environmentally sensitive tract of land in South Texas. The FDIC acquired an interest in the land when it became the receiver of a failed bank. The FDIC sold the bank's assets to Heights Bank; still, the FDIC remained liable for losses Heights suffered on the sale of certain assets, *provided* the FDIC approved the sale in advance. Here, Heights found a buyer for the environmentally sensitive land and the FDIC approved the sale. At this point, the plaintiffs filed this action to enjoin the sale. The plaintiffs alleged that the FDIC violated the National Environmental Policy Act by approving the sale without considering the environmental impact of the sale.

Without receiving evidence or entering findings of fact, the district court granted the plaintiffs a mandatory preliminary injunction. We hold that the district court had jurisdiction to enjoin the FDIC because the FDIC was acting in its corporate capacity. Nevertheless, we vacate the district court's injunction and remand for further consideration because the Sierra Club has not yet shown that it is entitled to injunctive relief and because the district court has not entered findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

I

In the late 1980's, Champion Savings Association ("Champion") obtained an interest in a tract

[*]District Judge of the Southern District of Mississippi, sitting by designation.

of land known as the Playa del Rio ("Playa") when it loaned money to the owner of the land. The Playa consists of almost 12,500 acres of wetlands in South Texas. Champion became the owner of the Playa when its debtor was unable to pay the loan secured by the property.[1]

Shortly thereafter, Champion failed and the Federal Deposit Insurance Corporation ("FDIC") became its receiver.[2] The FDIC entered into an acquisition agreement with Heights of Texas, Federal Savings Bank ("Heights"). Under the acquisition agreement, the FDIC transferred substantially all of Champion's former assets, including its interest in the Playa, to Heights. In a parallel agreement, the FDIC entered into an assistance agreement with Heights in which the FDIC agreed to indemnify Heights for capital losses it incurs on the sale of certain "covered assets." The assistance agreement assured Heights that it would not suffer a loss on assets that Champion had carried on its books at an inflated value. In order to be indemnified, however, the assistance agreement required Heights to submit to the FDIC an asset sales request, which the FDIC could either approve or disapprove.

Heights has now informed the FDIC that it intends to sell the Playa to the Pacific Union Company for $5.8 million. The Playa's present book value is $7.4 million and, thus, the sale would result in a capital loss of $1.6 million. Pursuant to the assistance agreement, Heights asked the FDIC to bear this loss, and in September of 1992 the FDIC agreed.

II

The Sierra Club, Frontera Audubon Society, and Norman L. Richard ("Sierra Club") filed this suit to require the FDIC to withdraw its approval of the sale of the Playa. The Sierra Club also asked the court to enjoin the FDIC from approving the sale of the Playa until the FDIC, pursuant to the

---

[1]Champion and its borrower entered into a settlement in which the borrower transferred its interest in the Playa to Champion. Later Champion's borrower contested the settlement and Champion's successor had to foreclose on the land to quiet title to the Playa.

[2]Actually, the Federal Savings and Loan Insurance Corporation ("FSLIC"), not the FDIC, took over Champion. In 1989, however, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), which abolished the Federal Home Loan Bank Board and the FSLIC. FIRREA also established the FSLIC Resolution Fund and appointed the Federal Deposit Insurance Corporation the manager of the FSLIC Resolution Fund. Under the FIRREA, the FDIC is now responsible for approving or disapproving Height's asset sales requests. *See* 12 U.S.C. § 1821a(a). For the sake of simplicity, we will refer to these government agencies as the FDIC throughout our opinion.

National Environmental Policy Act ("NEPA"), has determined the environmental impact of the sale of the Playa. It appears, however, that the Sierra Club's ultimate goal is to prevent the Heights from selling the Playa to the Pacific Union Company so that an environmentally conscious entity, like the Texas Nature Conservancy, can purchase the land. The Texas Nature Conservancy has offered to purchase the Playa, but its offer is lower than the Pacific Union Company's offer.

In any event, at a hearing on January 22, 1993, the district court issued a mandatory preliminary injunction ordering the FDIC to "withdraw its approval and withhold future approval for Heights' sale of the Playa del Rio property, pending consideration by the FDIC Board of Directors of the issues surrounding the FDIC's approval or rescission of the Playa del Rio sale request." The Sierra Club was prepared to present witnesses at that hearing, but the district court made its decision without hearing the Sierra Club's witnesses. The district court did not take any testimony because the district court believed that this case turns primarily on the reach of the "anti-injunction" provision of the Federal Deposit Insurance Act. The FDIC appeals the district court's preliminary injunction.

## III

While we review the district court's preliminary injunction for an abuse of discretion, we review *de novo* the district court's legal conclusions. *See Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.,* 600 F.2d 1184, 1187 (5th Cir.1979); *Pullman-Standard, Div. of Pullman, Inc. v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).

## A

We begin with the FDIC's contention that 12 U.S.C. § 1821(j), in combination with other statutes, bars the district court from enjoining it. Simply put, the FDIC argues that Congress has divested the courts of equity jurisdiction in these matters. The Supreme Court has long held, however, that "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." *Califano v. Yamasaki,* 442 U.S. 682, 705, 99 S.Ct. 2545, 2559, 61 L.Ed.2d 176 (1979). *See also Amoco Production Co. v. Gambell,* 480 U.S. 531, 542, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987) ("Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's

jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.")  (Internal cites omitted.)   Thus, we must reject the FDIC's argument unless Congress has clearly and unambiguously limited the court's equity jurisdiction in these statutes.

The predicate statute upon which the FDIC relies provides:

Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation *as conservator or receiver.*

12 U.S.C. § 1821(j) (1989) (emphasis added).[3]  This statute directly addresses and expressly limits the court's power t o enjoin the FDIC when the FDIC is acting as a conservator or receiver. *See Telematics Int'l, Inc. v. NEMLC Leasing Corp.,* 967 F.2d 703 (1st Cir.1992); *281-300 Joint Venture v. Onion,* 938 F.2d 35, 39 (5th Cir.1991).  However, as the FDIC candidly admits, it was not acting as a conservator or a receiver when it approved the sale of the Playa;  instead it was acting in what it refers to as its corporate capacity.[4]  The FDIC, however, argues that Congress extended the 1821(j) bar on the court's equity jurisdiction in 12 U.S.C. §§ 1821a(a)(4), 1823(d)(3)(A).  Specifically, the FDIC argues that these statutes serve to limit the court's equity jurisdiction when the FDIC, acting in its corporate capacity, administers assets in the FSLIC Resolution Fund.

In this respect, the FDIC originally relied on section 1821a(a)(4), but now the FDIC argues that section 1821a(a)(4) (quoted *infra* ) merely clarifies section 1823(d)(3)(A).  Thus, we first examine section 1823(d)(3)(A) to see whether it, in conjunction with section 1821(j), bars the court's

[3]In general, section 1821 deals with the creation of the FDIC insurance fund and outlines the deposits that the fund insures.  *See* 12 U.S.C. § 1821(a).  This section also describes the FDIC's powers as a conservator or receiver of a failing financial institution, and generally defines the FDIC's powers over the insurance fund's assets when it acts in its capacity as a conservator or receiver.  *See, e.g.,* 12 U.S.C. §§ 1821(c), 1821(d).

[4]In chapter 16 of title 12 to the United States Code, 12 U.S.C. § 1811 *et seq.,* Congress created the FDIC, gave it certain responsibilities, and the power to fulfil those responsibilities.  All of the statutes that we discuss in this opinion are found in chapter 16.  In these statutes, Congress was careful to distinguish between the powers the FDIC enjoys when it acts in its corporate capacity as administrator of the corporation's funds and assets, and the powers the FDIC enjoys when it acts in its capacity as a conservator or receiver.  Sections 1819 and 1823 are, for today's purposes, the primary statutes describing the powers and duties the FDIC enjoys in its corporate capacity.  Sections 1821 and 1822 address the FDIC's duties and powers as conservator or receiver.  Congress spelled out the FDIC's powers in greater detail in later sections, but it continued to distinguish between the FDIC in its corporate capacity and its capacity as a conservator or receiver.  *See, e.g.,* 12 U.S.C. § 1821a(a)(5).

equity jurisdiction. Section 1823(d)(3)(A) provides:

> With respect to any asset acquired or liability assumed pursuant to *this* section, the Corporation shall have all of the rights, powers, privileges, and authorities of the Corporation as receiver under sections 1821 and 1825(b) of this title. (Emphasis added.)

To be clear, the question before us is whether this language casts an interpretive light on section 1821(j) that clearly and unambiguously requires the courts to refrain from exercising their equitable power over the FDIC, when the FDIC, in its corporate capacity, administers the FSLIC Resolution Fund. Although the FDIC makes a plausible argument, this statute simply does not reflect the clarity that the Supreme Court requires to strip away our traditional equitable powers.[5]

There are several obvious ambiguities in this statute. For example, the statute specifies that it applies only to assets and liabilities "assumed pursuant to this section," i.e., section 1823.[6] Yet, it appears that Congress gave the FDIC its interest in FSLIC Resolution Fund assets like the Playa through section 1821a, not section 1823. Section 1821a(a)(1) establishes the FSLIC Resolution Fund, names the FDIC as its manager, and orders the FDIC not to commingle its own assets with FSLIC Resolution Fund assets. *See also* 12 U.S.C. § 1821a(a)(3) (providing that "[a]ssets and liabilities transferred to the FSLIC Resolution Fund shall be assets and liabilities of the Fund and not of the Corporation"). Although the FDIC may be able to argue that it assumed the liability at issue, i.e., the obligation to indemnify Heights against the loss it may suffer on the sale of the Playa, under one of section 1823's several provisions, the point to be made is that the FDIC did not "clearly and unambiguously" acquire an interest and liability in the Playa pursuant to section 1823.

More importantly perhaps, section 1823(d)(3)(A) does not speak directly to the equitable jurisdiction of the federal courts. Instead, section 1823(d)(3)(A) only reaffirms in the FDIC, when acting in its corporate capacity, generally, "rights, powers, privileges, and authorities" that the FDIC

---

[5]The FDIC correctly notes that the language in section 1823(d)(3)(A) is very broad. The FDIC essentially argues that, given the language Congress chose, we should interpret section 1823(d)(3)(A) to grant the FDIC immunity from the court's equity jurisdiction in a wide variety of situations.

[6]Section 1823 addresses the FDIC's duties and powers over corporate funds, including transactions with insured banks, the investment of corporate funds, and the disposition of corporate assets—in short, duties and powers the FDIC enjoys when acting in its corporate capacity.

enjoys in its capacity as a receiver. The FDIC implicitly argues that in section 1823(d)(3)(A), Congress gave the FDIC the "privilege" to be free of the court's equity jurisdiction. Although this interpretation of the statute in not entirely untenable, the statute most certainly does not "clearly and unambiguously" require this interpretation.

Because section 1823(d)(3)(A) does not clearly limit the court's equity jurisdiction, we next ask whether section 1821a(a)(4) provides the clarity the Supreme Court requires. As noted above, section 1821a established the FSLIC Resolution Fund and names the FDIC as the fund's manager. Section 1821a(a)(4) provides:

> Effective August 10, 1989, the Corporation shall have all rights, powers, and duties to carry out the Corporation's duties with respect to the assets and liabilities of the FSLIC Resolution Fund that the Corporation otherwise has under this chapter.[7]

We first observe that, because we have above implicitly held that nowhere else "under this chapter" does the "Corporation" have the right of immunity from the court's equitable powers when acting in its corporate capacity, it follows, *a fortiori,* that the words of section 1821a(a)(4)—granting to the "Corporation" the rights and powers it otherwise has under this chapter—do not confer such an immunity. Furthermore, this section is similar to section 1823(d)(3)(A) and suffers from several of the same ambiguities. Although section 1821a(a)(4) again provides the FDIC with certain rights and powers when dealing with FSLIC Resolution Fund assets, its words, at best, are only obliquely directed to the court's jurisdiction. We simply cannot assume that a grant of rights and powers to the FDIC, without any reference to the court's power over the FDIC's exercise of those rights and powers, includes a limitation on anything so fundamentally embedded in our system of jurisprudence as the court's equity jurisdiction. Indeed, the court's equity jurisdiction provides an essential safeguard to individual rights against arbitrary government action that cannot be indirectly cast aside.

Moreover, the policy behind congressional limits on the court's equity jurisdiction supports our conclusion that these statutes do not shield the FDIC from the court's equity jurisdiction when,

---

[7]The FDIC now contends that Congress only enacted this section because litigants challenged the FDIC's power over FSLIC Resolution Fund assets. According to the FDIC, section 1821a(a)(4) is a technical amendment. It only clarifies that the FDIC, when acting in its corporate capacity, has all the rights and powers with respect to the FSLIC Resolution Fund that it has under section 1823(d)(3)(A).

in its corporate capacity, the FDIC administers the FSLIC Resolution Fund. Congress enacted section 1821(j) to ensure that the FDIC could "act in a quick and decisive manner in reorganizing, operating, or dissolving failed" financial institutions. *218-300 Joint Venture,* 938 F.2d at 39; *see also North Miss. Sav. & Loan Ass'n v. Hudspeth,* 756 F.2d 1096, 1101 (5th Cir.1985). When taking over a failed financial institution as its receiver, the FDIC must make immediate and crucial decisions concerning assets, liabilities, accounts and properties involving huge amounts of money in a short period of time. Allowing the FDIC to act quickly in these volatile situations enables it to adjust to rapidly changing markets, to collect funds, to secure and preserve the value of the assets it manages, and swiftly to bring stability to the institution. The court's equity jurisdiction could seriously hamper the FDIC's ability to serve as an effective conservator or receiver because an injunction, or the threat of an injunction, could prevent the FDIC from taking swift action.

The statutory duties imposed on the FDIC in its corporate capacity, however, generally do not involve the same urgency as when the FDIC acts as a receiver. In the case before us, once the FDIC had completed its receivership and had sold Champion's assets to Heights, the need to act quickly subsided. Heights made its decision to sell the Playa to the Pacific Union Company in the ordinary course of its business. Similarly, the FDIC made its decision to approve the sale of the Playa in the ordinary course of its day-to-day operations. Because there is no special need to act quickly in this case, there is little justification to extend the limit on the court's equity jurisdiction in section 1821(j) to the case before us.

B

We now turn to the FDIC's argument that the district court abused its discretion when it granted the Sierra Club a preliminary injunction because the Sierra Club did not prove that it is entitled to injunctive relief. *See Lakedreams v. Taylor,* 932 F.2d 1103 (5th Cir.1991).

To obtain a preliminary injunction, the plaintiff must show 1) that there is a substantial likelihood that it will succeed on the merits, 2) that there is a substantial threat that it will suffer irreparable injury if the district court does not grant the injunction, 3) that the threatened injury to the plaintiff outweighs the threatened injury to the defendant, and 4) that granting the preliminary

injunction will not disserve the public interest. *Canal Authority of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). The Sierra Club did not present any evidence on the four prerequisites for injunctive relief, and no findings of fact or conclusions of law concerning these factors were set forth by the district court.

The Sierra Club contends that it was unnecessary for the district court to make findings of fact because the parties agree on the material facts. Specifically, the Sierra Club contends that the parties agree that 1) the FDIC has not prepared an environmental impact statement, and 2) the Playa is environmentally sensitive. According to the Sierra Club, the parties disagree only on the following two legal questions: 1) whether the court has the power to enjoin the FDIC in this context, and 2) whether NEPA requires the FDIC to prepare an environmental impact statement before approving the sale of the Playa.

We have held that a district court may issue a preliminary injunction without an evidentiary hearing when the facts are not disputed. *Federal Savings and Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 558-559 (5th Cir.1987). Furthermore, at the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence. *Id.* Thus, the district court can accept evidence in the form of deposition transcripts and affidavits. *Id.*

Although the district court may employ informal procedures and rely on generally inadmissible evidence, the record must nevertheless support the district court's decision. Indeed, Rule 52 of the Federal Rules of Civil Procedure provides that "in granting or refusing interlocutory injunctions the court *shall* similarly set forth findings of fact and conclusions of law which constitute the grounds for its decisions." (Emphasis added.) In the absence of findings of fact and conclusions of law, we will only review the district court's injunction decision "when the record is exceptionally clear and remand would serve no useful purpose." *White v. Carlucci,* 862 F.2d 1209, 1210 n. 1 (5th Cir.1989) (citing *Davis v. United States,* 422 F.2d 1139, 1142 (5th Cir.1970)).

We think that further consideration by the district court, including factual findings and legal conclusions concerning the *Callaway* factors, are necessary for our review of the propriety of the

district court's preliminary injunction. In the first place, there are real questions concerning the substantial likelihood that the Sierra Club will prevail on the merits in this action. The FDIC strongly contends that the Sierra Club cannot prevail on the merits because, *inter alia,* 1) the sale of the Playa by Heights is essentially a private act outside the purview of NEPA, and 2) if NEPA does apply, it is in conflict with, and superseded by, federal banking law. The Sierra Club contends, however, that these questions involve purely legal issues that we can evaluate even though the district court did not consider them. We are not so sanguine about our ability to resolve these issues without a developed factual record. In addition, these legal issues are novel, and we will surely benefit from district court's prior consideration of these questions.

Still further, the FDIC contends that an injunction in this case is contrary to the public interest because the injunction would hamper its ability to manage the FSLIC Resolution Fund, to the harm of the taxpayers. Although the Sierra Club contends that the district court's order has not harmed the FDIC, the FDIC argues that the injunction hampers its ability to enter into purchase and assumption transactions that it uses to manage the FSLIC Resolution Fund. Moreover, the public has an interest in protecting environmentally sensitive lands like the Playa. To be sure, we do not have some of the basic facts about the Playa, which is at the center of this dispute. The effect of the district court's injunction, or the absence thereof, on the Playa itself surely has some relevance as to whether the district court should exercise its equitable powers. Similarly, third parties like the Pacific Union Company, which is attempting to purchase the Playa, may have a legitimate interest in this case that is worthy of consideration by the district court.

We thus conclude that it is, practically speaking, impossible for us to review the propriety of the district court's injunction without a more complete development of these factual and legal issues. Although the Sierra Club would have us conclude otherwise, the record in the case is not "exceptionally clear," and remand will serve a necessary purpose in the decisional process of this case.

IV

For all the foregoing reasons, we hold that the district court did have jurisdiction to enjoin the FDIC from approving the sale of the Playa to the Pacific Union Company. Nevertheless, we find that

the Sierra Club has not yet proved that it is entitled to injunctive relief, and that the district court has not complied with Rule 52 of the Federal Rules of Civil Procedure. Accordingly, we VACATE the district court's injunction and REMAND for further proceedings not inconsistent with this opinion.

VACATED and REMANDED.