21 F.3d 469
 305 U.S.App.D.C. 375
 NATIONAL TRUST FOR HISTORIC PRESERVATION IN the UNITED
STATES; Historic Preservation League, Inc., A
Non-Profit Corporation; Preservation
Texas, Inc., A Non-Profit
Corporation, Appellants,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION; Andrew C. Hove, Jr.,
in his Official Capacity as Acting Chairman,
Federal Deposit Insurance Corporation, Appellees.
 No. 93-5137.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 25, 1994.
Decided April 22, 1994.
 
 Appeal from the United States District Court for the District of Columbia.
 Richard B. Nettler, Washington, DC, argued the cause for appellants. With him on the briefs were David A. Doheny, Elizabeth S. Merritt and Andrea C. Ferster, Washington, DC.
 Jerome A. Madden, Counsel, F.D.I.C., Washington, DC, argued the cause for appellees. With him on the brief were Ann S. DuRoss, Asst. Gen. Counsel, and Richard J. Osterman, Jr., Sr. Counsel, F.D.I.C., Washington, DC.
 Kirk Kelso Van Tine and P. Matthew Sutko, Washington, DC, entered appearances for amicus curiae Resolution Trust Corp.
 Stuart W. Bowen, Jr., Austin, TX, entered an appearance for amicus curiae Texas Historical Com'n.
 Before: WALD, SILBERMAN, and RANDOLPH, Circuit Judges.
 Opinion PER CURIAM.
 
 
 1
 Concurring opinion filed by Circuit Judge WALD in which Circuit Judge SILBERMAN joins.
 
 
 2
 Concurring opinion filed by Circuit Judge RANDOLPH.
 
 PER CURIAM:
 
 3
 Upon consideration of the briefs and oral argument on rehearing, the original panel opinion, reported as National Trust for Historic Preservation v. FDIC, 995 F.2d 238 (D.C.Cir.1993), is ordered reinstated, except for the analysis of South Carolina v. Regan, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984), contained in footnote one, which is now controlled by Judge Wald's concurrence.
 
 
 4
 The original panel held that 12 U.S.C. Sec. 1821(j), which bars courts from restraining or affecting the FDIC in the exercise of its powers or functions as a conservator or receiver, applied in this case as a result of 12 U.S.C. Sec. 1823(d)(3)(A). 995 F.2d at 240. Section 1823(d)(3)(A) provides: "With respect to any asset acquired or liability assumed pursuant to this section, the Corporation shall have all of the rights, powers, privileges, and authorities of the Corporation as receiver under sections 1821 and 1825(b) of this title." Shortly after our opinion issued, the Fifth Circuit, in a somewhat different factual setting, permitted an injunction action against the FDIC to go forward. Sierra Club, Lone Star Chapter v. FDIC, 992 F.2d 545 (5th Cir.1993). Nothing said in Sierra Club persuades us to alter the panel's original decision.
 
 
 5
 There is no question that the "rights, powers, privileges, and authorities" granted the FDIC under Sec. 1821 devolve upon it when it acquires assets or assumes liabilities pursuant to Sec. 1823. In Sierra Club, however, the Fifth Circuit expressed doubts about whether the FDIC had acted under Sec. 1823, or under some other provision. 992 F.2d at 549-50. Whatever may have been the situation there, in this case there is no doubt that the FDIC acquired the Dr. Pepper Headquarters Building pursuant to Sec. 1823, as our original opinion recognized. 995 F.2d at 240. Appellants do not contend otherwise.
 
 
 6
 The Fifth Circuit also believed that Sec. 1823(d)(3)(A) did not "clearly and unambiguously" give "the FDIC the 'privilege' to be free of the court's equity jurisdiction." 992 F.2d at 550. The court offered no explanation for this conclusion and we do not agree with it. Our original opinion concluded that the FDIC's immunity from judicial restraint is among the "rights, powers, privileges, and authorities" (Sec. 1823(d)(3)(A)) contained in Sec. 1821. 995 F.2d at 240. It is in that category for two reasons. First, it is set forth in a subsection of Sec. 1821, that is, in Sec. 1821(j). Second, the FDIC's immunity from judicial restraint, like the FDIC's exemption from state taxation and the immunity of its property from levy, attachment or garnishment, which Sec. 1823(d)(3)(A) also bestows on the FDIC through its reference to Sec. 1825(b), is among the FDIC's "rights, powers, privileges, and authorities" when it is acting as a receiver. It is no answer to say, as appellants do, that Sec. 1821(j) merely "operates as a limitation on the rights of third parties to obtain injunctive or equitable relief against the FDIC." Brief for Appellants at 15. By so limiting the powers, rights and privileges of third parties, Sec. 1821(j) increased the rights, privileges and powers of the FDIC. To take away one person's "right" to sue another is to give the other the "right" not to be sued. The court in Sierra Club, 992 F.2d at 550, thought it significant that Sec. 1823(d)(3)(A) "does not speak directly to the equitable jurisdiction of the federal courts." We attach no importance to this. The provision is specific enough--every Sec. 1821 right, power, privilege or authority of the FDIC as receiver is included. Section 1823(d)(3)(A)'s reference to Sec. 1821 necessarily encompasses Sec. 1821(j). Inclusion by reference is a time-honored drafting technique, without which federal statutes would become even more unwieldy than they already are.[1]
 
 
 7
 It is worth adding that, even apart from statutory language, the line drawn in Sierra Club raises problems. The FDIC is authorized to operate in the capacity of a corporate insurer under Sec. 1823, see FDIC v. Nichols, 885 F.2d 633, 636 (9th Cir.1989), and in the capacity of a receiver for failed financial institutions under Sec. 1821, see 12 U.S.C. Sec. 1821(c)(2) & (3). The FDIC has discretion regarding whether it will wear one hat or the other, or both. To hold, as the Fifth Circuit did, that when the FDIC acts in its corporate capacity, Sec. 1823(d)(3)(A) does not insulate it from judicial restraint pursuant to Sec. 1821(j), is to create an incentive for the FDIC to act as receiver in order to avoid the consequences of litigation and delay. Such a system would make little sense. The FDIC's charge is to maximize the value of the failed institution's assets and it should be free to decide whether this is best accomplished if it acts as a receiver or in its corporate capacity or both.[2]
 
 
 8
 The judgment of the district court dismissing the suit for lack of jurisdiction is affirmed for the reasons stated in the original panel opinion and for the reasons stated above.
 
 
 9
 WALD, Circuit Judge, with whom SILBERMAN, Circuit Judge, joins, concurring:
 
 
 10
 With the benefit of full briefing and argument, I now agree with the result and the basic reasoning of the reinstated panel opinion on the construction of 12 U.S.C. Sec. 1821(j) and its application to the FDIC in its corporate capacity via 12 U.S.C. Sec. 1823(d)(3)(A). That plenary treatment allows us to decide this important case of first impression in our circuit with the necessary confidence which I, for one, did not have months ago when forced to a decision "in barely over a week on an unargued stay motion." National Trust for Historic Preservation in the United States v. FDIC, 995 F.2d 238, 244 (D.C.Cir.1993) (Wald, J., dissenting). I was concerned then--I believe justifiably--about "potentially immunizing an agency from court enforcement of the entire U.S. Code," a result which I thought warranted an in-depth review of the statute, its structure, purpose and history. It seemed counter-intuitive that the FDIC, acting in its receiver capacity, could "operat[e] a factory or even a hazardous waste facility in a manner that was causing serious health or environmental damage and that allegedly violated the Clean Water Act or the Occupational Safety and Health Act[, and] court[§ would be] powerless to take 'any action ... to restrain or affect' that operation, unless the FDIC 'has acted or proposes to act beyond, or contrary to, its statutorily prescribed, constitutionally permitted powers or functions.' " Id. at 244 (Wald, J., dissenting) (quoting panel majority, id. at 240). Indeed, even more horrendous hypotheticals could be constructed. Would the courts be powerless if the FDIC chose to sell crack cocaine in an effort to liquidate assets discovered in an unclaimed safety deposit box of a failed bank? It is of course by the use of such unlikely scenarios that judges test the integrity and inevitability of "plain meaning" interpretations.
 
 
 11
 While after further study and reflection I agree with the original panel majority that the language of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, 103 Stat. 183 (codified as amended in scattered sections in the United States Code), supports its construction, the result is sufficiently " 'odd' " so as to oblige us to "search for other evidence of congressional intent to lend the term its proper scope." Public Citizen v. United States Department of Justice, 491 U.S. 440, 454, 109 S.Ct. 2558, 2566, 105 L.Ed.2d 377 (1989) (quoting Green v. Bock Laundry Mach. Co., 490 U.S. 504, 509, 109 S.Ct. 1981, 1984, 104 L.Ed.2d 557 (1989)). For example, in South Carolina v. Regan, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984), the Supreme Court considered a similarly sweeping limitation on court action appearing in the Tax Anti-Injunction Act, 26 U.S.C. Sec. 7421(a): "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." In Regan, the Court turned to the Tax Anti-Injunction Act's legislative history, despite the fact that the Act's language "could scarcely be more explicit," Bob Jones Univ. v. Simon, 416 U.S. 725, 736, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974). The legislative history discussed in Regan by no means abounded with detailed revelations of congressional intent, but the Court nonetheless concluded from it that the Act's "purpose and the circumstances of its enactment indicate that Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy." 465 U.S. at 378, 104 S.Ct. at 1114 (footnote omitted). See also id. at 373-74, 377, 104 S.Ct. at 1111-1112, 1114.
 
 
 12
 I don't agree with the suggestion by the original panel majority that the Regan Court's recourse to legislative history as a means of narrowing the scope of an otherwise improbably broad statute was confined to the "unique context" of tax collection or "Supreme Court doctrine that otherwise insulates the tax collector against suits that would deflect the collector's energies from the collection of taxes." National Trust, 995 F.2d at 239 n. 1. To the contrary, the special governmental interest in insulating the tax collector from suits would argue against consulting legislative history to insure there was not a contrary interpretation that would reduce the tax collector's protection from court action in apparent contradiction to the statute's plain meaning. Nonetheless, my own research--and counsels'--has uncovered no evidence in this case that Sec. 1821(j) was passed in the "context of a statutory scheme that provided an alternative remedy," Regan, 465 U.S. at 373, 104 S.Ct. at 1111, for any and all misfeasance by the liquidating agency, or otherwise bars only actions brought by parties who have access to an alternative remedy against the agency.
 
 
 13
 Therefore, I am compelled to conclude that Sec. 1821(j) does indeed bar courts from "restrain[ing] or affect[ing] the exercise of powers or functions of the [FDIC] as a conservator or a receiver," 12 U.S.C. Sec. 1821(j), unless it "has acted or proposes to act beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions," National Trust, 995 F.2d at 240. Congress undoubtedly did not contemplate anything like the parade of possible violations of existing laws--civil and criminal--that creative judges can conjure up, but given the breadth of the statutory language, untempered by any persuasive legislative history pointing in a different direction, the statute would appear to bar a court from acting in virtually all circumstances. I am somewhat assuaged by the fact, described at oral argument and in the briefs, that a private person genuinely aggrieved by such unlawful FDIC action could generally bring a suit for damages, or seek administrative redress through the Sec. 1821(d) monetary claims procedure which ultimately includes judicial review. See Rosa v. Resolution Trust Corp., 938 F.2d 383, 399400 (3d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991) ("the effect of [Sec. 1821(j) ] in this case is solely to prevent a particular remedy ... [and] does not deprive plaintiffs, if wronged, of any other remedy that would not 'restrain or affect' the exercise of the receiver's or conservator's powers or functions"). And, of course, we do not decide today what might happen if the denial of an injunction in any particular situation itself violated constitutional due process. Cf. Regan, 465 U.S. at 375, 104 S.Ct. at 1112; id. at 393-94, 104 S.Ct. at 1122 (O'Connor, J., concurring in judgment).
 
 
 14
 Thus, it would seem that the instant situation in which the FDIC is alleged to have violated sections 106 and 110(a) of the National Historic Preservation Act, 16 U.S.C. Secs. 470f, 470h-2(a), is the exception rather than the rule. Without jurisdiction, we cannot express any opinion on whether the FDIC is statutorily compelled to consult with the Advisory Council before selling for demolition structures like the Dr. Pepper building which is "considered one of the finest examples of Art Moderne architecture in Texas." National Trust, 995 F.2d at 241 (Wald, J., dissenting). See California v. Grace Brethren Church, 457 U.S. 393, 408-11, 102 S.Ct. 2498, 2507-09, 73 L.Ed.2d 93 (1982) (holding declaratory judgment generally barred whenever injunction is prohibited). Congress, of course, can change this state of affairs should it so choose.
 
 RANDOLPH, Circuit Judge, concurring:
 
 15
 I continue to believe footnote one of the original panel opinion, 995 F.2d at 239 n. 1, properly describes and distinguishes South Carolina v. Regan, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984).
 
 
 
 [1]
 Abbott Bldg. Corp. v. United States, 951 F.2d 191 (9th Cir.1991), construed 12 U.S.C. Sec. 1464(d)(6)(C) (1988), which protects the Federal Savings and Loan Insurance Corporation (FSLIC) against judicial restraint when it acts as a receiver, much in the same way and with the same language as Sec. 1821(j) protects the FDIC. The FSLIC, acting as a receiver, purchased plaintiff's property with a credit bid at a foreclosure sale held under state law. Plaintiff, claiming that the sale was not conducted in accordance with state law, sued to set the sale aside. The court held that the suit did not seek to "restrain or affect" the FSLIC's powers as a receiver, but "simply leaves the determination of third party rights in the hands of others." 951 F.2d at 195. The court limited its holding to situations in which the FSLIC, acting as a receiver, had acquired property in an invalid foreclosure sale. Id. The court added that the statute would still immunize the FSLIC from claims that it had acted in an "improper manner." Given the limited scope of this holding, in a situation far removed from this case, we see no need to discuss whether we agree with it
 
 
 [2]
 California v. Grace Brethren Church, 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982), forecloses appellants' argument that Sec. 1821(j) does not bar its suit to the extent it is seeking a declaratory judgment rather than an injunction. There is, the Court ruled, so "little practical difference between injunctive and declaratory relief" that a statute barring injunctions will also have the effect of barring declaratory judgments. 457 U.S. at 408-09, 102 S.Ct. at 2508; see also Sanchez-Espinoza v. Reagan, 770 F.2d 202, 208 n. 8 (D.C.Cir.1985)