IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

NO. 95-40207
_____

IN RE: FEDERAL DEPOSIT INSURANCE CORPORATION,

Petitioner.

Petition for Writ of Mandamus to the United States
District Court for the Southern District of Texas

_____

NO. 95-40230
_____

UNITED STATES OF AMERICA,

Plaintiff,
versus

11,950 ACRES OF LAND, MORE OR LESS, LOCATED IN CAMERON COUNTY,
TEXAS,

Defendant,

FIRST HEIGHTS BANK,

Defendant-Counter Claimant,

STATE OF TEXAS; CAMERON COUNTY TAX ASSESSOR-COLLECTOR,

Defendants,

and

PACIFIC UNION COMPANY,

Defendant-Appellee.
**********************************
POINT ISABEL INDEPENDENT SCHOOL DISTRICT,

Cross Claimants-Appellees,
versus

FEDERAL DEPOSIT INSURANCE CORPORATION, As Manager of the
FSLIC Resolution Fund (FDIC),

Cross Defendant-Appellant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JOE G. SANDERS,

Trustee,

KATHY GRADY, C. L. BALLARD, PLAYA DEL RIO INC., KMG ENTERPRISES,

Defendants,

and

PACIFIC UNION COMPANY,

Cross Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

(July 7, 1995)

Before JOLLY and BENAVIDES, Circuit Judges, and FITZWATER, District Judge.[*]

FITZWATER, District Judge:

This petition for a writ of mandamus challenges an order of a magistrate judge declining to quash notices of deposition issued to three members of the Board of Directors of the Federal Deposit Insurance Corporation ("FDIC"). The question presented is whether the magistrate judge clearly abused his discretion by permitting the depositions in the absence of findings of, and of a basis to find, exceptional circumstances. We hold that he did, and therefore grant the petition.

I

Petitioner FDIC seeks relief from an order of a magistrate judge[1] in a condemnation action filed by plaintiff United States of America ("United States") in the Brownsville Division of the Southern District of Texas (the "Brownsville Action"). The United States sues to condemn several thousand acres of land located at the southernmost tip of Texas along the Gulf Coast and the Rio

_____

[*]District Judge of the Northern District of Texas, sitting by designation.

[1]The parties have consented to try the lawsuit before the magistrate judge. Therefore, there was no need for the FDIC first to seek review of the order from a district judge.

- 2 -

Grande River, known as Playa del Rio.  We are not strangers to litigation regarding Playa del Rio, which we have previously characterized as "an environmentally sensitive tract of land in South Texas."  See Sierra Club v. FDIC, 992 F.2d 545, 547 (5th Cir. 1993).  Although we address in this petition a ruling in the Brownsville Action, the animating force for the instant dispute is related litigation pending in the Houston Division of the Southern District of Texas (the "Houston Action").  The Houston Action pertains to the validity and enforceability of a 1992 agreement to sell Playa del Rio to defendant-respondent Pacific Union Company ("Pacific Union").  In order to understand the relevant background facts as well as the question we decide, it is necessary that we recount some of the prior history of this contemplated sale, and of the Sierra Club litigation, and that we discuss the Houston Action.

In 1988 First Heights Savings Bank, fsb ("First Heights") and the Federal Savings and Loan Insurance Corporation ("FSLIC") entered into a transaction whereby First Heights acquired the assets--including Playa del Rio--of various failed thrift institutions.[2]  As part of the arrangement between First Heights and the FSLIC, the parties executed an Assistance Agreement that entitled First Heights to reimbursement for losses on covered assets.  The loss protection conferred by the Agreement obligated First Heights to procure the FSLIC's approval prior to the sale of a covered asset.  The Agreement also gave the FSLIC the right in its discretion to direct the transfer of a covered asset to anyone whom the FSLIC specified.  The FDIC became Manager of the FSLIC Resolution Fund upon passage of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 1989 U.S.C.C.A.N. (103 Stat.) 183 ("FIRREA").  FIRREA abolished the FSLIC, and the FDIC retained most of the FSLIC's liabilities.  The FDIC is a party to the Houston Action in its capacity as Manager of the FSLIC Resolution Fund.  The FDIC is not a party to the Brownsville Action.

_____

[2]Because the particulars are unnecessary to our decision, we do not elaborate upon the details of the transactions by which First Heights became the owner of Playa del Rio.  These may be gleaned from Sierra Club, 992 F.2d at 547.

On August 6, 1992 First Heights and Pacific Union entered into a contract for the sale of Playa del Rio. First Heights sought the FDIC's consent, and submitted a request for loss assistance, because the sale price of $5.8 million was less than Playa del Rio's adjusted book value of $7.4 million. In September 1992 the FDIC approved First Heights' request.

In January 1993, however, three parties, including the Sierra Club, sued the FDIC to require it to withdraw its approval of the sale, and to enjoin it from consenting to the sale until the FDIC had determined the environmental impact in accordance with the National Environmental Policy Act. Sierra Club, 992 F.2d at 548.[3] The district court issued a mandatory preliminary injunction ordering the FDIC to "withdraw its approval and withhold future approval for Heights' sale of the Playa del Rio property, pending consideration by the FDIC Board of Directors of the issues surrounding the FDIC's approval or rescission of the Playa del Rio sale request." Id. (quoting district court order).

The FDIC appealed the injunction. While the appeal was pending, the FDIC on February 5, 1993 notified First Heights that it had rescinded its approval of the sale to Pacific Union. On June 8, 1993 we vacated the preliminary injunction and remanded the case for further proceedings, because plaintiffs had not yet shown they were entitled to injunctive relief, and the district court had failed to comply with the requirement of Fed. R. Civ. P. 52 that it enter findings of fact and conclusions of law. Id. at 552.

On June 9, 1993 the FDIC's Board of Directors formally approved a staff proposal that the FDIC Division of Resolutions be permitted to exercise its discretion under the Assistance Agreement to direct that First Heights sell Playa del Rio to the United States Fish & Wildlife Service for $5.4 million.[4] The Board adopted a resolution that recited inter alia that the FDIC had earlier approved the sale to Pacific Union for $5.8 million, but noted the Sierra Club litigation and the district court's

---

[3]We observed in Sierra Club that plaintiffs' apparent goal was to prevent the sale to Pacific Union "so that an environmentally conscious entity . . . can purchase the land." Id.

[4]We filed our opinion in Sierra Club on June 8, 1993, one day prior to the Board's action. Sierra Club, 992 F.2d 545.

injunction. The resolution explained that Playa del Rio included substantial wetlands and represented a valuable natural resource and critical habitat to several endangered species. It also pointed out that the Coastal Barrier Improvement Act of 1990 authorized the Fish & Wildlife Service to acquire the property from First Heights. The Board found that the sale would permit the recovery of significant economic value for Playa del Rio, and should resolve the issues presented by the Sierra Club litigation.

In July 1993, prior to the FDIC's directing First Heights to sell Playa del Rio to the Fish & Wildlife Service, First Heights resubmitted to the FDIC a request to approve the sale to Pacific Union, and for loss assistance. In an August 24, 1993 letter, the FDIC notified First Heights that it had disapproved the request. First Heights then terminated the sale contract.

The next day, on August 25, 1993, First Heights and the FDIC initiated the Houston Action, seeking a judgment declaring on various grounds that the proposed sale of Playa del Rio from First Heights to Pacific Union was of no force and effect. Pacific Union has counterclaimed, contending that First Heights and the FDIC are liable for violating the Fifth Amendment by taking property without just compensation; seeking review of the FDIC's decisions pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.; and alleging a violation of Pacific Union's right to substantive due process.

Pacific Union complains that it is an unjustly-rejected suitor for Playa del Rio who has expended in excess of $1.75 million to close the purchase. It contends that discovery in the Brownsville and Houston Actions has revealed that First Heights declined to complete the sale to Pacific Union because another agency of the United States government wanted the property. Pacific Union asserts that after the parties executed the sale contract, and following FDIC approval, Secretary of the Interior Bruce Babbitt ("Secretary Babbitt") requested of FDIC Acting Chairman Andrew Hove ("Chairman Hove") that FDIC representatives meet with Fish & Wildlife Service personnel. Secretary Babbitt indicated that the Fish & Wildlife Service was interested in adding Playa del Rio to the lower Rio Grande Valley National Wildlife Refuge Complex. Pacific Union avers that

former Texas Governor Ann Richards and Vice President Al Gore supported Secretary Babbitt's efforts. Pacific Union maintains that without its knowledge, representatives of the Fish & Wildlife Service and the FDIC met in April, resulting in a plan to sell Playa del Rio to the Fish & Wildlife Service or its designee. The parties discussed transferring Playa del Rio to the Fish & Wildlife Service through a conduit, The Nature Conservancy ("TNC"). The FDIC and TNC could not agree on an amount necessary to indemnify TNC from anticipated claims by Pacific Union that TNC had interfered with the First Heights-Pacific Union sale contract. Pacific Union contends the Houston Action is the result of the FDIC and First Heights' realization that the First Heights-Pacific Union sale contract was an impediment to the Fish & Wildlife Service's plan to acquire Playa del Rio.

Pacific Union asserts that it submitted interrogatories in the Houston Action concerning the identities of fact witnesses and persons responsible for making the decision concerning the FDIC's August 24, 1993 disapproval of First Heights' request to approve the sale to Pacific Union and request for loss assistance. It points out that the parties agreed that this discovery was also equally usable in the Brownsville Action. The FDIC identified three persons in response to the interrogatories: Acting Chairman Hove; Comptroller of the Currency Eugene A. Ludwig ("Comptroller Ludwig"); and Acting Director of the Office of Thrift Supervision Jonathan L. Fiechter ("Director Fiechter"). Pacific Union contends that aside from the significance of the deponents' testimony with respect to the claims against the FDIC, the depositions will be important to establish civil conspiracy against First Heights.

On December 8, 1993 the United States commenced the instant Brownsville Action, in which it seeks to condemn 11,500 acres of Playa del Rio. The trial court has bifurcated the trial of the title and value issues, and the first phase is currently set to be tried in August 1995.

In the Houston Action, the parties have engaged in substantial discovery. Pacific Union has deposed six current or former FDIC employees, including Kevin Stein ("Director Stein"), the Associate Director of the FDIC's Division of Resolutions, who was principally responsible for managing the FSLIC Resolution Fund. Also deposed were Michael D. Solomon, who was Acting

Assistant General Counsel and served as Director Stein's primary legal advisor; Leslie R. Crawford, a staff attorney who was involved in advising Director Stein regarding Playa del Rio; James A. Weaver, Dallas Regional Manager of the FDIC's Division of Resolutions; Ken Sheffield, a Senior Case Manager on the Division staff; and Benjamin R. Idziak, formerly an attorney in the FDIC's Dallas office.

On March 2, 1995 Pacific Union served deposition notices directed to three members of the FDIC's Board of Directors: Chairman Hove,[5] Comptroller Ludwig, and Director Fiechter. The notices bore the case caption of both the Brownsville and Houston Actions, and stated that the depositions would take place in Dallas, Texas on March 13 and 14, 1995.

On March 6, 1995 the FDIC moved in both the Brownsville and Houston Actions to quash the notices. Pacific Union contended the depositions were appropriate because the FDIC had identified these individuals in response to interrogatories as persons responsible for, or principally involved in, the FDIC's disapproval of the sale to Pacific Union. The magistrate judge in the Houston Action granted the relief,[6] but the magistrate judge in the Brownsville Action denied the FDIC's motion. The FDIC appealed the March 6, 1995 order of the Brownsville magistrate judge to this court, and separately filed the instant petition for a writ of mandamus. A panel of this court stayed the order, and expedited the appeal.

II

"We are to issue a writ of mandamus only `to remedy a clear usurpation of power or abuse of discretion' when `no other adequate means of obtaining relief is available.'" In re Fibreboard Corp., 893 F.2d 706, 707 (5th Cir. 1990) (quoting In re Paradyne Corp., 803 F.2d 604, 612 (11th Cir. 1986)).[7]  "An abuse of discretion exists only when there is [a] definite and firm conviction that the

_____

[5]Chairman Hove is currently Vice Chairman of the FDIC.

[6]The Houston magistrate judge directed Pacific Union to submit proposed questions in writing, following which the judge would give the issue further consideration.

[7]We hold that the FDIC has no other adequate means of obtaining relief. We agree with the Eleventh Circuit that requiring a government official "to incur a contempt sanction would have

- 7 -

court below committed clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Conkling v. Turner, 18 F.3d 1285, 1293 (5th Cir. 1994) (quoting Hoffman v. Merrell Dow Pharmaceuticals, Inc., (In re Bendectin Litig.), 857 F.2d 290, 307 (6th Cir. 1988), cert. denied, 488 U.S. 1006 (1989)) (internal quotations omitted). The term abuse of discretion "does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge." United States v. Walker, 772 F.2d 1172, 1176 n.9 (5th Cir. 1985) (quoting Black's Law Dictionary (5th ed. 1979 at 10)).

It is a settled rule in this circuit that "exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." In re Office of Inspector General, 933 F.2d 276, 278 (5th Cir. 1991) (per curiam) (citing EEOC v. K-Mart, 694 F.2d 1055, 1067-68 (6th Cir. 1982)). "[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding t heir reasons for taking official actions." Id. (quoting Simplex Time Recorder Co. v. Secretary of Labor, 766 F.2d 575, 586 (D.C. Cir. 1985)). "High ranking government officials have greater duties and time constraints than other witnesses." In re United States, 985 F.2d 510, 512 (11th Cir.) (per curiam), cert. denied, ___ U.S. ___, 114 S.Ct. 545 (1993). "[T]he Supreme Court has indicated that the practice of calling high officials as witnesses should be discouraged." Id. (citing United States v. Morgan, 313 U.S. 409 (1941)).

### III

We hold that the magistrate judge clearly abused his discretion by declining to quash the deposition notices issued to the three FDIC Directors.

### A

---

serious repercussions for the relationship between two coequal branches of government." In re United States, 985 F.2d 510, 513 (11th Cir.) (per curiam) (granting writ of mandamus), cert. denied, ___ U.S. ___, 114 S.Ct. 545 (1993). Moreover, although the FDIC also brings an interlocutory appeal of the magistrate judge's order, seeking to invoke appellate jurisdiction on the basis of Cates v. LTV Aerospace Corp., 480 F.2d 620 (5th Cir. 1973), Pacific Union maintains that Cates does not confer jurisdiction, and moves to dismiss the appeal. We do not think Pacific Union can at once move to dismiss the appeal and urge that the FDIC has an adequate means of obtaining relief.

As a threshold matter, we observe that the magistrate judge apparently made no attempt to find exceptional circumstances before rejecting the FDIC's motion to quash. During the course of a previously-scheduled status conference with counsel, the judge addressed the merits of the FDIC's quashal motion. The hearing record reflects that he considered brief arguments from counsel; assumed that some areas of inquiry might be privileged and that objections based upon privilege could be lodged during the course of the depositions; and concluded that the depositions should be allowed to go forward. Except with respect to the scheduling of the depositions,[8] it does not appear that the magistrate judge considered the high-ranking status of the deponents, the potential burden that the depositions would impose upon them, or the substantive reasons for taking the depositions. The judge's order denied the motion without assigning reasons. After rejecting the motion to quash, and in denying the FDIC's motion for a stay pending appeal, the magistrate judge offered some rationale for his decision. He held inter alia that Pacific Union was entitled to depose the three Directors because (1) the FDIC is a party to the Houston Action, and that action involves issues concerning Playa del Rio, which is the center of the Brownsville Action; (2) Pacific Union has a motion pending to add the FDIC as a party to the Brownsville Action and there is a motion pending in the Houston Action to abate in favor of the Brownsville Action; (3) in the Houston Action the FDIC has indicated in interrogatory answers that the three Directors made certain decisions concerning the sale of the property, and those matters are relevant to the dispute; (4) the parties have stipulated to the use of the Houston Action interrogatories in the Brownsville Action; and (5) Pacific Union has represented that it has been unable to obtain the information through other means. These findings do not demonstrate, however, that the judge specifically considered and found that exceptional circumstances were present.

B

_____

[8]The magistrate judge provided in his order that, "Considering the high-level governmental positions held by these deponents, the Court admonishes the parties to cooperate as to the scheduling of these depositions."

- 9 -

Moreover, we are unable to discern from the record before us a basis on which the judge could have found the existence of exceptional circumstances.

Pacific Union contends, on essentially the following line of reasoning, that the depositions should be allowed to go forward. Chairman Hove was the author and recipient of correspondence that reveals the development and implementation of a plan and agreement to sell Playa del Rio to the Fish & Wildlife Service rather than to Pacific Union. The FDIC's decision is the subject of Pacific Union's counterclaim in the Houston Action and cross-claim in the Brownsville Action. The FDIC is seeking in the Houston Action a declaration that the decision to sell the land to the Fish & Wildlife Service rather than to Pacific Union was proper and that the First Heights-Pacific Union contract is a nullity; therefore, Pacific Union should be permitted to depose the decision-makers in order to ascertain the facts on which the determination was based and the standard applied in the process. The FDIC made a decision that directly affected Pacific Union's property rights and then filed a lawsuit against Pacific Union seeking a judicial determination that its action terminated those rights. There is no other source of evidence than the testimony of three deponents in question, especially since the FDIC designated only these individuals as being the persons responsible for making the decision regarding the FDIC's August 24, 1993 disapproval of First Heights' request. The June 9, 1993 FDIC resolution is an inadequate substitute for a full administrative agency record. The seriousness of the litigation, and of allegations of misconduct (including conspiracy and cover-up) by government agencies and officials who grossly abused their power to deprive Pacific Union of its contract rights, and the government's role as a party-plaintiff, favor disclosure.

We disagree that Pacific Union has made the strong showing necessary for a finding of exceptional circumstances. Pacific Union disclaims any intention to "suggest that senior government officials may be deposed in every case in which the government is a party." (Footnote omitted). Yet the reasoning Pacific Union advances would risk eviscerating well-settled principles of administrative law. If countenanced, this rationale would justify deposing high-level government officers in a plethora of cases in order to probe their decision-making processes and the reasons for their

decisions. Agency leaders often send and receive correspondence relative to their actions. Their official conduct frequently affects--sometimes adversely--the property rights of private parties. This does not of itself subject them to the burdens of litigation discovery.

Nor is the present case distinguished by the fact that the FDIC initiated the Houston declaratory judgment action. As the FDIC correctly points out, the order before us for review was entered in the Brownsville Action, which the FDIC did not commence and to which it is not a party. It is not sufficient for Pacific Union to rely upon the joint nature of the discovery undertaken in the two cases, because in the Houston Action--to which the FDIC is a party--the magistrate judge quashed the depositions.

But even overlooking this impediment to Pacific Union's position, we reject the proposition that an administrative agency subjects its high-level officials to discovery when it brings a declaratory judgment action intended to give effect to an agency decision. Agency actions are usually reviewable, if at all,[9] pursuant to the APA. It is recognized that courts reviewing these decisions normally "may not require the agency officials who participated in that decision to give testimony explaining their action unless there has been a strong showing of bad faith or improper behavior." Bank of Commerce v. City National Bank, 484 F.2d 284, 288 (5th Cir. 1973) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971)), cert. denied, 416 U.S. 905 (1974). We discern nothing in the character of a declaratory judgment action of the type brought here that warrants altering this rule, and permitting discovery from the agency's high-level officials in which they are obligated to explain their decisions. Absent a strong showing of bad faith or improper behavior, senior agency decision-makers do not subject themselves to discovery when the agency seeks a declaratory judgment as to the validity of its action. By adopting such a rule, courts could unintentionally place government agencies in the untenable position of relinquishing otherwise available avenues of relief in order to preserve the application of settled rules that govern judicial review of agency decisions.

---

[9]The FDIC contends it decisions with respect to Playa del Rio are unreviewable. We need not decide this question.

Nor do we see in the present record a strong showing of bad faith or improper behavior, notwithstanding Pacific Union's allegations of misconduct (including conspiracy and cover-up) and assertions of gross abuse of power by government agencies and officials. The present state of the evidence reflects that, pursuant to its authority under the Assistance Agreement to approve the sale of covered assets and to direct First Heights to transfer such assets to anyone whom the FDIC specified, the FDIC retained discretion with regard to the disposition of Playa del Rio. Absent a showing of contrary provisions of law or contract, and none has been made here, the fact that agency heads considered the preferences (even political ones) of other government officials concerning how this discretion should be exercised does not establish the required degree of bad faith or improper behavior.

We note that Pacific Union also relies in part upon the FDIC's response to Pacific Union's interrogatory No. 7 to urge that the three Directors are proper deponents. In that interrogatory, Pacific Union asked the FDIC to "[i]dentify each and every committee or board, and its members, that made, was responsible for, or was principally involved with any determination or decision concerning the August 24, 1993 disapproval" of First Heights' July 1993 second request to approve the sale of Playa del Rio to Pacific Union and request for loss assistance. The FDIC has demonstrated, however, that although interrogatory No. 7 and an attendant definition of terms required that it identify the Directors, the August 24 decision was in fact made by Director Stein of the FDIC's Division of Resolutions, whom Pacific Union has already deposed. We think it will be the rarest of cases--and the present action is not one--in which exceptional circumstances can be shown where the testimony is available from an alternate witness. See In re United States, 985 F.2d at 512 (citing as weighing against finding of extraordinary circumstances, fact that testimony was available from alternate witnesses).

*   *   *

The magistrate judge denied the FDIC's motion to quash depositions without first determining that there were exceptional circumstances that justified this form of discovery from three senior

- 12 -

officials of the FDIC.  This was a clear abuse of discretion.  Moreover, from our review of the record, we are unable to discern any exceptional circumstances that would have warranted allowing the depositions to take place.  Accordingly, we grant the petition and order the magistrate judge to vacate the March 6, 1995 order and grant the FDIC's motion to quash depositions.[10]

PETITION GRANTED.

---

[10] We dismiss the FDIC's appeal as moot.