CLYDE TURNER, RECEIVER FOR LANCE, INC., DBA THUNDERBIRD HOTEL, APPELLANT, v. DEWCO SERVICES, INC., A NEVADA CORPORATION; CONSOLI-DATED CASINOS, INC., A NEVADA CORPORATION; AND ROBERT M. BUCKALEW, TRUSTEE, RESPONDENTS.

No. 6338

January 21, 1971                    479 P.2d 462

*John Peter Lee,* of Las Vegas, for Appellant.

*Lionel, Sawyer & Wartman,* of Las Vegas, for Respondents.

## OPINION

By the Court, ZENOFF, C. J.:

Under date of January 6, 1967 Dewco Services, Inc., contracted to sell the Thunderbird Hotel in Las Vegas to Lance, Inc., for $13,000,000. Terms of sale included a cash down payment of $1,150,000 and the assuming by the buyer of two already outstanding promissory notes secured by deeds of trust totalling $7,560,000, the additional assumption of certain trade obligations and the execution of a third promissory note to Dewco for $3,863,407.87 which also was secured by a third trust deed against the property.

A more detailed statement is recited in the federal court case, Lance, Inc. v. Dewco Services, Inc., 422 F.2d 778 (9th Cir. 1970), involving bankruptcy problems between the same parties. For our purposes, only those facts necessary to resolve the issues of this appeal are set forth. The issues relate to foreclosure attempts on the third deed of trust after Lance defaulted in the terms of the purchase agreement.

Within a few months after the purchase, the operation of the hotel having proved a losing venture, Dewco and Lance executed a moratorium agreement postponing payments called for by the third promissory note but conditioned upon Lance maintaining certain of the assumed obligations upon a current basis. This agreement negotiated in October 1967 was followed by further agreements on December 5, 1967 by which Dewco promised to assist Lance with a cash loan provided Lance's stockholders matched the loan with equal money of their own. If they failed to do so by December 10, under the agreement Lance would peaceably return possession of the hotel to Dewco and at the same time waived the ten-day notice of default provisions of the original purchase money note.

The stockholder commitments were not met, possession and operation of the hotel were turned over to Dewco and foreclosure proceedings were instituted from which stem the issues of this appeal. Lance claims in a suit prosecuted by the receiver of Lance, Inc., that notice was not waived and that the notice of default required by NRS 107.080(3) was not received, though mailed, and that more importantly, the first published notice of the foreclosure sale was in defiance of and in violation of the Federal Bankruptcy Court's order restraining any proceedings by creditors and that therefore the first notice being void, all of the proceedings stemming from it including the foreclosure sale were void.

This appeal is from the denial by the trial court of those contentions.

1. The trustee named in the deed of trust mailed the notice of breach to Lance, Inc., at its customary place of business within the Thunderbird Hotel. It was returned "Moved, Left No Address." No explanation of inadvertence on anybody's part was made.

We find no breach of the statutory duty to send the notice by certified mail at the address known by the grantor. The statute does not require proof that the notice be received.[1]

Further on the facts, a copy had been sent to the attorney for Lance, Inc., and the participation of Lance in all of the efforts to save the transaction from going back to the seller belie any prejudice or lack of knowledge of the commencement of the foreclosure. Default rites are not that picayune. Mullin v. County of Polk, 76 So.2d 282 (Fla. 1954); Gardner v. McGoldrick, 141 N.Y.S.2d 587 (Sup.Ct. 1955); Building Supplies v. Gillingham, 135 P.2d 832 (Wash. 1943).

2. To the second and more impressive ground of appeal, appellant asserts a fatal violation of NRS 21.130 which requires

---

[1]NRS 107.080(3). "The 15- or 35-day period provided in paragraph (a) of subsection 2 shall commence on the first day following the day upon which the notice of default and election to sell is recorded in the office of the county recorder of the county in which the property is located and a copy of the notice of default and election to sell is mailed by certified mail with postage prepaid to the grantor or to his successor in interest at the address of such grantor or his successor in interest if such address is known, otherwise to the address of the trust property. . . ."

that before the sale of property there must be the publication of the notice of sale three times for three successive weeks.[2]

At the time of the first of the three publications an order restraining creditors had been issued by the Federal Bankruptcy Court. The order was dated February 1, 1968, but prior, on March 12 Dewco had petitioned the referee to allow foreclosure to go forward. On April 12 the first notice was published and four days later the referee granted the motion to allow the sale and dissolved the restraining order as to Dewco. What we are faced with is the question whether the four days constituted a disobedience so serious as to require this court to set aside the entire sale.

We find from the record that the referee not only set aside the restraining order as to this sale, but executed a nunc pro tunc order back to the original date that the motion for that purpose was originally sought. In effect, then, the restraint as to the publication of notices did not even exist as against Dewco. While appellant argues, both in the lower court and before us, that the nunc pro tunc order is of questionable pedigree, it is not for us to reason why so far as that order is concerned. The presumption of validity attaches to it, the referee did not withdraw or cancel it, no contempt proceedings were brought for the purported violation of the original order, nor was any early attempt made in any court or proceedings to stop the progress of the sale. Any way we look at it the four-day lapse was not sufficiently prejudicial to void the sale. Hunter v. Truckee Lodge, 14 Nev. 24 (1879); Malter v. Falcon Mining Co., 18 Nev. 209, 2 P. 50 (1883); Maynard v. Ivey, 21 Nev. 241, 29 P. 1090 (1892); Porteous Decorative Co. v. Fee, 29 Nev. 375, 91 P. 135 (1907); Tonopah Lumber Co. v. Nevada Amusement Co., 30 Nev. 445, 97 P. 636 (1908); Self & Sellman Mill & Bldg. Co. v. Savage, 34 Nev. 332, 123 P. 333 (1912); Ferro v. Bargo Min. & Mill. Co., 37

---

[2]NRS 21.130. *"Notice of sale under execution.* Before the sale of property on execution, notice thereof shall be given as follows:

" . . . .

"3. *Real property.* In case of real property, by posting a similar notice particularly describing the property, for 20 days successively, in 3 public places of the township or city where the property is situated and also where the property is to be sold; and also by publishing a copy of the notice *three times,* once a week, for 3 successive weeks, in a newspaper, if there be one in the county. . . ." (Emphasis added.)

Nev. 139, 140 P. 527 (1914); Peccole v. Luce & Goodfellow, 66 Nev. 360, 212 P.2d 718 (1949).

In any event the purpose of publication under NRS 21.130 has been fulfilled. The statute obviously intends publication to give notice of the sale of the premises to possible third-party buyers and the defaulting party should he not have received the notice provided in NRS 107.080. Since there was publication as provided in the statute all persons it was intended to inform must be presumed to have been so informed and the purpose of the statute fulfilled.

3. The claim of inadequacy of price at the sale cannot now be raised for the first time on appeal. We note, however, no evidence to indicate fraud, unfairness or oppression. Golden v. Tomiyasu, 79 Nev. 503, 387 P.2d 989 (1963); Brunzell v. Woodbury, 85 Nev. 29, 449 P.2d 158 (1969).

Affirmed.

BATJER, MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.