**ABBOTT BUILDING CORPORATION, INC., the Abbott Trust, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Western Title Company, Inc., a Nevada corporation, Defendants–Appellees.**

**No. 90–15688.**

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 22, 1991.*

Decided Dec. 6, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

George W. Abbott, Minden, Nev., for plaintiffs-appellants Abbott Bldg. Corp., Inc., and the Abbott Trust.

James M. Walsh, Henderson & Nelson, Reno, Nev., for defendant-appellee Western Title Co., Inc.

Valerie N. Strandell, McDonald, Carano, Wilson, McCune, Bergin, Frankovich & Hicks, Reno, Nev., for defendant-appellee Federal Deposit Ins. Corp.

Before D.W. NELSON, HALL and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Abbott Building Corporation (ABC) and the Abbott Trust (both referred to as appellants) brought this action to set aside the foreclosure sale of appellants' property to the Federal Savings and Loan Insurance Corporation (FSLIC)[1]. The district court held that it had no jurisdiction over the action against FSLIC and that if it did appellants failed to state a claim. Appel-

---

1. When Congress abolished the Federal Home Loan Bank Board and FSLIC in August of 1989, the Federal Deposit Insurance Corporation (FDIC) stepped into FSLIC's shoes for purposes of defending actions against FSLIC. *See* Financial Institutions Reform Act of 1989, Pub.L. 101–73, Title IV, § 401(f)(2), August 9, 1989, 103 Stat. 183, 354–63. (FIRREA) See the historical and statutory notes at 12 U.S.C.A. § 1437 (West Supp.1991). Although the FDIC is now acting as the manager of the FSLIC resolution fund, FSLIC will continue to be referred to as the relevant entity for the purposes of this opinion.

In its opinion, the district court also ordered the United States substituted as a party in place of FSLIC, but then granted FSLIC's motion to dismiss. We see no reason or authority for the purported substitution, and note that the United States has never appeared in this case, although FSLIC did appear and file a brief before us. We, therefore, will continue to treat this as a case against FSLIC. However, to avoid the confusion that further changes in the caption might cause, we have not directed its amendment.

lants also sued Western Title Co. (Western), the trustee under the deed of trust. As to it, the district court found that no claim was stated.

We hold that the district court did have jurisdiction over the claim against FSLIC, but affirm because we agree that the complaint failed to state a claim against either FSLIC or Western.

## BACKGROUND

In November of 1985, ABC executed a promissory note in favor of Sierra Savings & Loan Association (Sierra). Payment of the note was secured by a deed of trust on certain real property owned by ABC under which Sierra was the beneficiary and Western was the trustee.[2] By September of 1987, ABC had defaulted in its payments under the note, so foreclosure proceedings were commenced by Sierra and Western. In October of 1987, the Federal Home Loan Bank Board appointed FSLIC receiver of Sierra. ABC did not respond by paying the delinquency; it filed bankruptcy instead. That, of course, delayed the foreclosure proceedings. However, by May of 1989 ABC's bankruptcy action had been dismissed and Western proceeded to publish notice of a foreclosure sale of the property. In so doing it used the name by which it was designated in the deed of trust—Lawyers Title. The foreclosure sale was held on June 9, 1989, and FSLIC, as receiver, purchased the property with a credit bid of $124,193.05. Western then conveyed title to the property to the receiver. This action followed.

In their complaint appellants asserted that their rights had been violated because Western gave notice by using its former name, Lawyers Title. They also asserted that the sale should have been postponed because appellants had lenders ready to pay off the note. They sought to set aside Western's deed and to recover damages for the deed's interference with their title and business.

Both FSLIC and Western moved to dismiss. The district court dismissed the action against FSLIC on grounds of lack of jurisdiction, and opined that even if it had jurisdiction the appellants had failed to state a claim against FSLIC. *Abbott Building Corp. v. FSLIC*, 739 F.Supp. 532 (D.Nev.1990). The court also dismissed the action against Western for failure to state a claim. *Id.*

We disagree with the district court's determination that it lacked jurisdiction to adjudicate the claim against FSLIC, but agree with the district court that appellants' complaint wholly failed to state a claim against either FSLIC or Western.

## DISCUSSION

### A. *Jurisdiction.*

We must first determine whether the district court had subject matter jurisdiction to hear this action as it pertained to FSLIC. That court decided that it did not, but we disagree.

The existence of subject matter jurisdiction is a question of law which we review de novo. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

We first underscore the fact that this action was not directed against the FSLIC based on its activities as an agency of the government. Rather, it is a claim against the FSLIC in its capacity as receiver of a savings and loan association, a claim that has its origins in obligations that bound the association. As a result, we need not consider questions related to the qualified immunity enjoyed by receivers for personal liability incurred through their receivership conduct. *See Morrison–Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1222–23 (9th Cir.1987), *cert. dismissed,* 488 U.S. 935, 109 S.Ct. 358, 102 L.Ed.2d 349 (1988). For similar reasons, and also because Congress has explicitly

**2.** The named trustee was Lawyers Title of Northern Nevada, Inc. (Lawyers Title). Law-yers Title later changed its corporate name to Western.

provided that the FSLIC and the FDIC may "sue and be sued," we need not consider general questions about the sovereign immunity of federal agencies. *See* 12 U.S.C. § 1725(c)(4) (repealed); 12 U.S.C. § 1819(a)(Fourth). We can also lay aside exhaustion of remedy issues, for it is not claimed that there were any administrative remedies to be exhausted by the appellants. *See Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 579–87, 109 S.Ct. 1361, 1371–76, 103 L.Ed.2d 602 (1989).[3] Hereafter, unless otherwise indicated, when we use the designation FSLIC, we refer to it in its receivership capacity only.

What we must decide is whether the provisions of 12 U.S.C. § 1464(d)(6)(C)[4] precluded the granting of any relief in this case. That section reads as follows:

> Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver.

In particular, we must determine whether the appellants' request that the foreclosure sale be set aside would "restrain or affect" FSLIC's exercise of its powers as receiver. The real gravamen of the appellants' claim is that the foreclosure sale was not conducted in accordance with the requirements of state law, and that as a result the foreclosure cannot stand.

We are not entirely without guidance in this area, for although we have not found authorities dealing with foreclosure sales, other convergent lines of authority suggest that the district court did have jurisdiction to adjudicate this dispute.

In the first place, it can hardly be gainsaid that if a FSLIC receivership wishes to collect upon an alleged claim, it cannot simply seize assets of an alleged debtor, but must resort to an action at law. As the numerous collection actions demonstrate,

FSLIC has regularly found it necessary to resort to the courts in order to establish and enforce its demands against third parties. *See, e.g., FSLIC v. Gemini Management,* 921 F.2d 241 (9th Cir.1990); *FSLIC v. Musacchio,* 695 F.Supp. 1044 (N.D.Cal. 1988). It has never been thought that FSLIC's inability to simply directly enforce its claims against recalcitrant debtors somehow restrained or affected it in the use of its receivership powers.

The second line of authority is concerned with claims against a FSLIC receivership. In that group of cases, FSLIC has been known to explicitly claim that resort to the courts by third parties does affect or restrain it in the exercise of its powers. We decisively rejected that position in *Morrison–Knudsen.* In so doing we said that "[j]udicial adjudication ... does not restrain or affect a receivership; it simply determines the existence and amount of claims that a receiver is to honor in its eventual distribution of assets." 811 F.2d at 1217. As we also pointed out in *Morrison–Knudsen,* the fact that FSLIC was given authority to settle or compromise claims militated in favor of a determination that FSLIC cannot simply decide the merits of the controversies in which it is involved. 811 F.2d at 1218–19. We said: "Settlement and compromise strongly suggest the presence of the power of the other party to take the dispute to court. Settlement and compromise are to avoid that result. A body with the power to say 'yes' or 'no' with the force of law has much less need to settle or to compromise." *Id.* at 1219. While *Morrison–Knudsen* dealt with claims against the receivership, the statute under consideration applied to settlement and compromise of claims "in favor of or against the insured institutions." 12 U.S.C. § 1729(d). Our positions in *Morrison–Knudsen* were approved in *Coit,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602. *Cf., Rosa v. Resolution Trust Corp.,* 938

---

**3.** FIRREA did create a claims procedure, and required its exhaustion. *See* 12 U.S.C. § 1821(d)(13)(D). However, no party asserts that the FIRREA claims procedure has any application to this equitable action to set aside the trustee's deed from Western to FSLIC, a deed

which purported to divest appellants of title to their land.

**4.** A similar provision was made part of FIRREA. *See* 12 U.S.C. § 1821(j).

F.2d 383, 397–400 (3d Cir.1991), where after a lengthy and careful discussion of other jurisdictional problems the court went on to apply the descendant of § 1464(d)(6)(C) [5], without reference to any further jurisdictional concerns.

The case at hand involves a confluence of these lines of authority because FSLIC's actions partake of both of them. FSLIC had a receivership claim against appellants based upon a loan secured by a deed of trust. If the State of Nevada had required judicial foreclosure proceedings, FSLIC would have been forced to commence an action to assert and realize upon the claimed debt and security. Instead, FSLIC purported to have Western proceed under a non-judicial foreclosure statute, but, appellants claim, Western did not follow state law in so doing. As a result of those actions, it is said, FSLIC obtained a rump deed from the foreclosure trustee, Western. Appellants therefore acquired a claim against the receivership to resist ouster from their own property.

It would be rather inconsistent to hold that the courts do have authority to adjudicate claims by and claims against receiverships, but that courts are precluded from adjudicating claims where assets belonging to another have purportedly been deeded to the receivership by someone without any right to do so. Nothing in the law requires that result. While the activities of the receiver might be examined, the court need only decide if those activities have succeeded in accomplishing a change in the property rights of a third party. That does not affect the receiver's own powers, it simply leaves the determination of third party rights in the hands of the courts.[6]

In this case the court is called upon to decide whether property was foreclosed upon in the manner permitted by law. If not, appellants can retain their property subject to FSLIC's deed of trust; if so, the property itself has become part of the receivership assets. Cf. *Gayle Mfg. Co., Inc. v. FSLIC*, 910 F.2d 574 (9th Cir.1990) where we held that the district court could decide the priority of lien claims between FSLIC and a mechanic's lien claimant on a parcel of property.

In reaching this decision we do not mean to establish the overly simple proposition that every time a party claims that a receiver has done an act in an improper manner adjudication can have no effect upon the exercise of powers of the receiver. That would be an overly broad exception, which would enable any clever pleader to swallow up the statute at will. Cf. *Rosa*, 938 F.2d at 397–98. We simply hold that when FSLIC purports to have acquired the property of another through a foreclosure under the provisions of state law, the courts have jurisdiction to decide whether that law was indeed followed.[7]

### B. *The Merits.*

After our lengthy jurisdictional prolegomenon we come to consider the merits of appellants' case against FSLIC and Western and find it has none.[8]

Appellants seem to claim that because the trustee changed its name from Lawyers Title of Northern Nevada, Inc. to Western Title Co., Inc., the corporation it-

---

**5.** 12 U.S.C. § 1821(j).

**6.** This case, of course, does not involve the right of a seized institution against FSLIC itself. *See, Fidelity Fin. Corp. v. FSLIC*, 834 F.2d 741 (9th Cir.1987).

**7.** Moreover, if it were determined that some monetary relief was due, that would not mean that a party could collect it directly as opposed to simply having an established claim that would be dealt with like any other claim against the receivership estate. We need not consider whether the portion of the complaint which seeks damages as an adjunct to the requested equitable relief would have to be submitted to the claims procedure established by FIRREA.

12 U.S.C. § 1821(d)(13)(D). Suffice it to say that since the equitable action must fall in any event, there is no footing upon which the damage claim can stand.

**8.** We review de novo the dismissal of appellants' action for failure to state a claim. *Kruso*, 872 F.2d at 1421. We will not uphold a dismissal for failure to state a claim "unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989) (citation omitted).

self changed into a different entity as a result of which the party legally required to give notice did not do so. However, there is no support for the proposition that a change of name results in a change of entity. Instead, the authority is quite to the contrary. *See, e.g., Alley v. Miramon,* 614 F.2d 1372, 1384 (5th Cir.1980); *Bass v. Service Supply Co., Inc.,* 25 Ark.App. 273, 757 S.W.2d 189, 191–92 (1988); *Briere v. Barbera,* 163 A.D.2d 659, 558 N.Y.S.2d 278, 279 (1990); *First Am. Sav. Bank, F.S.B. v. Adams,* 87 N.C.App. 226, 360 S.E.2d 490, 493 (1987).

A perhaps more sympathetic reading of the complaint might lead to the conclusion that appellants really mean to say that since the entity is now known as Western the notice of sale was defective due to its being published in the old name which appeared on the trust deed itself—Lawyers Title. If so, Nevada law is less sympathetic than this reading. There is nothing in the complaint to indicate that there was the slightest prejudice from the defective notice, if defective it was. In fact, much more egregious procedural errors have been treated with insouciance by the Nevada courts where no prejudice was shown. *See Hankins v. Administrator of Veterans Affairs,* 92 Nev. 578, 555 P.2d 483 (1976) (a sale was valid despite the notice's error in listing the place of the sale); *Turner v. Dewco Servs., Inc.,* 87 Nev. 14, 479 P.2d 462 (1971) (sale valid despite publication of first notice before there was authority to do so).

There is not a whisper of an allegation that the appellants, or others, were misled in any way whatever. In fact, in their brief before us appellants make it clear that third parties and appellants themselves were well aware of the sale proceedings. Appellants' formalistic claim is exactly the kind of challenge that prompted the Supreme Court of Nevada to remark:

"Default rites are not that picayune." *Turner,* 87 Nev. at 16, 479 P.2d at 464. Even if we were not bound by Nevada's construction of its procedures, we would agree; as it is, we must agree.[9]

## CONCLUSION

Appellants have done much regarding the promissory note that was given when ABC borrowed money from Sierra and deeded property to secure the loan. Unfortunately for appellants, the one thing they omitted was the making of the required payments on the loan. Bankruptcy did not enable them to avoid the consequences of ABC's default. Neither can this action.

AFFIRMED.

9. Appellants also assert, without citation of authority, that FSLIC and Western should have postponed the foreclosure sale because appellants had "identified" lenders who were "ready, willing and able" to pay off the amounts owed. Just why that is or should be so when appellants had already had years to perform their obli-

gation is not made clear. Nor do appellants explain why those ready, willing and able lenders did not advance the necessary funds forthwith so that appellants could save the property. Given the absence of authority, we also reject this claim.