September 19, 1994
UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 94-1509

SUNSHINE DEVELOPMENT, INC., ET AL.,
Plaintiffs, Appellees,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS LIQUIDATING AGENT FOR FIRST SERVICE BANK FOR SAVINGS,
Defendant, Appellant.

ERRATA SHEET

The opinion of the court issued on August 22, 1994 is
corrected as follows:

On page 2, line 12 insert period after "reverse"

On page 22, line 5 delete ", 1821(d)(6)"

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 94-1509

SUNSHINE DEVELOPMENT, INC., ET AL.,

Plaintiffs, Appellees,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS LIQUIDATING AGENT FOR FIRST SERVICE BANK FOR SAVINGS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Martin F. Loughlin, Senior U.S. District Judge]

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Lagueux,* District Judge.

Gregory E. Gore, Counsel, with whom Ann S. DuRoss, Ass't

General Counsel, Robert D. McGillicuddy, Senior Counsel, Michelle

Kosse, Counsel, Steven A. Solomon, and Backus, Meyer & Solomon

were on brief, for appellant.
Dennis G. Bezanson for appellees.

August 22, 1994

*Of the District of Rhode Island, sitting by designation.

SELYA, Circuit Judge. This appeal requires us to
SELYA, Circuit Judge.

determine the scope of the immunity from injunctions granted to

the Federal Deposit Insurance Corporation (FDIC) under the

Financial Institutions Reform, Recovery, and Enforcement Act of

1989 (FIRREA), Pub. L. 101-73, 103 Stat. 842 (Aug. 9, 1989), in

the context of bankruptcy proceedings. After sketching how

Congress intended FIRREA to operate, and clarifying the source

and extent of bankruptcy courts' powers to manage the estates of

debtors whose fates are intertwined with the affairs of failed

financial institutions, we conclude that the court below lacked

the authority to restrain the FDIC in the exercise of its lawful

statutory powers. Accordingly, we reverse.

I.

Background

The facts essential to an understanding of this appeal

are not disputed. Between 1985 and 1988, First Service Bank for

Savings made a total of seven separate loans to Sunshine

Development, Inc. in connection with various projects, including

Salisbury Pasture (Franklin, New Hampshire), Brightside Place

(Derry, New Hampshire), and 154 Webster Street (Hudson, New

Hampshire). The debt (much of which remains unpaid) is evidenced

by three promissory notes. The notes are cross-collateralized

and secured by mortgages encumbering all three pieces of

property.

A

Neither lender nor borrower survived the collapse of

3

the New England real estate market. A year after the last loan

had been made, First Service was declared insolvent. On March

31, 1989, the FDIC was appointed as liquidating agent (and

thereby became the owner and holder of the notes). On November

24, 1989, Sunshine petitioned for voluntary reorganization under

Chapter 11 of the Bankruptcy Code. The FDIC seasonably filed a

proof of claim in the bankruptcy court, asserting secured claims

amounting to $4,948,203.87. In April of 1991, the FDIC

petitioned the bankruptcy court for relief from the automatic

stay, see 11 U.S.C. 362(d)(1) & (2), so that it might initiate

foreclosure proceedings against the properties. Among other

things, the FDIC asserted that during the prior two years

Sunshine had failed to pay required real estate taxes and

insurance premiums. The bankruptcy court granted the FDIC's

petition on July 1, 1991. No appeal ensued.

On July 31, 1992, the FDIC filed an amended proof of

claim in the bankruptcy court. In March of 1993, the court

converted Sunshine's bankruptcy into a Chapter 7 case and

appointed a trustee.1 On July 20, 1993, the FDIC amended its

proof of claim once again. Throughout, the FDIC, for reasons not

illuminated in the record, abjured any attempt to foreclose on

the mortgages that it held.

B

Prior to any insolvency, the bank and the developer

1We henceforth refer to the debtor and its trustee in
bankruptcy collectively as "Sunshine" or "appellees."

4

parted company. Each sued the other. In one suit, the bank

sought to collect principal and interest due under the notes; in

the other, the borrower sought to recover damages from the bank

on various lender liability theories. These suits, though begun

in 1988, remained dormant for some time. In 1991, the district

court consolidated them and eventually referred the ongoing

litigation to the bankruptcy court.

The bankruptcy court repackaged the litigation and

brought it to a head. Following a two-week trial that ended in

May of 1992, a jury not only decided that Sunshine owed nothing

to the FDIC as the bank's successor in interest, but also decided

that Sunshine deserved $2,000,000 in damages. The bankruptcy

court disagreed. It set aside the jury verdict and entered

judgment in favor of the FDIC, against Sunshine, for

$2,717,856.12.2 Sunshine appealed to the district court on

February 12, 1993. See 28 U.S.C. 158(a). The appeal (which we

shall term "the Merits Appeal") is still pending in that court.

C

The pot came to a boil when the FDIC scheduled a

foreclosure sale of all three properties for May 11, 1994.

Alarmed at the prospect of foreclosure before the Merits Appeal

2At trial, the FDIC claimed that the borrower owed roughly
$3,951,000. Sunshine contested a fraction of the debt (on the
basis that First Service failed properly to credit certain
interim payments), admitted that the remainder was due, and
sought to set off damages allegedly owed on the lender liability
claims against the balance. The bankruptcy court's award
represents the portion of the underlying debt that Sunshine did
not controvert.

5

had been decided,3 appellees petitioned the bankruptcy court for

injunctive relief to pretermit the proposed foreclosure sale.

For whatever reason, the bankruptcy court referred the petition

to the district court. That court asked a magistrate-judge for a

report and recommendation. See Fed. R. Civ. P. 72(b).

Proceeding on the mistaken presumption that the automatic stay

remained in force, the magistrate recommended issuance of a

temporary restraining order aimed at halting the foreclosure.

The FDIC immediately objected to the recommendation.

See id. It noted the magistrate's mistake and again asserted,

citing FIRREA's anti-injunction provision, that the district

court lacked the authority to grant the requested relief. The

district court held a hearing one day before the scheduled

foreclosure sale. In the course of the hearing, the parties

acknowledged the magistrate's bevue and agreed that the automatic

stay had been dissolved almost three years earlier. The district

judge nonetheless enjoined the FDIC from foreclosing on the

properties pending determination of the Merits Appeal.4 The

judge did not state the basis for his order.

3Sunshine apparently feared, inter alia, that if the

properties were sold in foreclosure and it subsequently prevailed
on its lender liability claims, it effectively would have lost
the right of setoff, and, instead, would be merely a general
unsecured creditor of the receivership. We take no view either
of the legitimacy of these fears or of the parties' rights,
should they materialize.

4The Merits Appeal is pending before a different district
judge. At oral argument, the parties informed us that it was
heard and taken under advisement on May 24, 1994.

6

II.

Standard of Review

Black letter law in this circuit instructs that

district courts ordinarily are to determine the appropriateness

of granting or denying a preliminary injunction on the basis of a

four-part test that takes into account (1) the movant's

likelihood of success on the merits, (2) the potential for

irreparable injury, (3) a balancing of the relevant equities, and

(4) the effect on the public interest. See Narragansett Indian

Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); Aoude v. Mobil

Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988). This formulation

can only be used in circumstances in which the district court is

empowered to issue an injunction. It is this antecedent question

the question of judicial power, sometimes called "jurisdiction"

that comprises the centerpiece of this appeal. Consequently,

while we ordinarily review a district court's decision to grant

or deny injunctive relief under a deferential abuse-of-discretion

standard, see, e.g., Narragansett Indian Tribe, 934 F.2d at 5,

this appeal which presents a pure question of law engenders

de novo review. See McCarthy v. Azure, 22 F.3d 351, 354 (1st

Cir. 1994); Liberty Mut. Ins. Co. v. Commercial Union Ins. Co.,

978 F.2d 750, 757 (1st Cir. 1992); see also Narragansett Indian

Tribe, 934 F.2d at 5 (explaining that an injunction may be

overturned based on either "a mistake of law or an abuse of

discretion").

The standard of review is particularly important

7

because this case has a curious twist. The magistrate's

recommendation was premised on a mistaken fact, the parties

explicitly informed the district court of the error, and the

court, though cognizant that the magistrate's reasoning was

flawed, issued its own order without any accompanying

explanation. Thus, we are very much in the dark as to the

district court's thinking. In the end, however, it is not

necessary that we remand. Since we review the legal issue de

novo, access to the district court's rationale is not a

prerequisite to appellate review.5 Withal, the absence of any

articulated reasoning below as to this controlling issue both

increased the risk of error an unexplained ruling being more

likely to be a poorly considered one and reduced this court's

(and the parties') opportunities to benefit from the lower

court's analysis.

III.

Discussion

This case turns on the construction and interplay of

several provisions of the statutes that define the powers of the

FDIC and the bankruptcy courts, respectively. In each instance,

our starting point is the statutory text. See United States v.

5We wish to make it crystal clear that we prize the thinking
of the district courts and encourage district judges to state the
basis for their rulings whether or not they are legally required
to do so. While our review of legal questions is de novo, we

remain an appellate tribunal with the function of reviewing what
another court has already done: the thinking and analysis of
that earlier tribunal even when, on consideration, we disagree
with it is integral to the judicial process within which both
courts are engaged.

8

Gibbens, F.3d , (1st Cir. 1994) [No. 93-2203, slip op.

at 12].

A

FIRREA constitutes a vital part of the federal

government's response to the savings-and-loan crisis that rocked

the nation in the latter half of the last decade. The method of

the statute involves, among other things, "establish[ing]

organizations and procedures to obtain and administer the

necessary funding to resolve failed thrift cases and to dispose

of the assets of [those] institutions . . . ." H.R. Rep. No.

101-54(I), 101st Cong., 1st Sess. (1989), reprinted in 1989

U.S.C.C.A.N. 86, 103. To this end, FIRREA gives the FDIC

unprecedented powers so that it may function efficaciously as a

receiver or conservator of insolvent financial institutions. See

Telematics Int'l, Inc. v. NEMLC Leasing Corp., 967 F.2d 703, 705

(1st Cir. 1992) (explaining that FIRREA is designed to "enable

the FDIC to move quickly and without undue interruption to

preserve and consolidate the assets of the failed institution");

see also 12 U.S.C. 1821(d)(2)(B) (giving the FDIC wide-ranging

powers to take over the assets of, and operate, an insured

depository institution that fails); see generally H.R. Rep. No.

101-54(I), supra, 1989 U.S.C.C.A.N. at 126-29.

One major component of the statutory scheme is 12

U.S.C. 1821(j). It states that, with exceptions not relevant

here, "no court may take any action, except at the request of the

Board of Directors [of the FDIC] by regulation or order, to

9

restrain or affect the exercise of powers or functions of the

[FDIC] as a conservator or a receiver." Id. By its terms, then,

section 1821(j) is an anti-injunction measure, preventing courts

from issuing orders that unduly inhibit the FDIC in the exercise

of its statutory powers.6

Since the injunction issued below unabashedly restrains

and affects the FDIC, acting in its capacity as a receiver, our

inquiry reduces to whether the activity that the injunction kept

the FDIC from pursuing falls within the FDIC's powers under

FIRREA. This inquiry is actually composed of two subsidiary

questions: (1) As a general matter, does the FDIC have the power

to foreclose? (2) If so, does that power extend to the estate of

a bankrupt debtor?

B

The answer to the first query is patently in the

affirmative. Congress has given the FDIC broad authority "to

take over the assets . . . and conduct all business of the

institution," to "collect all obligations and money due the

institution," and to "preserve and conserve the assets and

property of such institution." 12 U.S.C. 1821(d)(2)(B)(i),

(ii), and (iv). As receiver, the FDIC may "place the insured

6Subject to enumerated exceptions, see 12 U.S.C.

1441a(b)(5), the Resolution Trust Corporation (RTC), when
operating as a receiver, enjoys the same powers, and is subject
to the same FIRREA protections, as the FDIC. See 12 U.S.C.

1441a(b)(4). Of particular interest here, section 1821(j)
applies equally to both agencies. Consequently, we will refer
freely to cases involving the RTC to illuminate section 1821(j)'s
reach in respect to the FDIC.

10

depository institution in liquidation and proceed to realize upon

the assets of the institution," 12 U.S.C. 1821(d)(2)(E),

"transfer any asset or liability of the institution," id.

1821(d)(2)(G)(i)(II), and, in addition to the specific powers

granted under these statutes, it may "exercise such incidental

powers as shall be necessary" to carry out its stated powers, id.

1821(d)(2)(J)(i).

Taken in the ensemble, this broad array of powers

easily encompasses the grant of a general power to foreclose on

properties that the failed institution held as collateral. See

Lloyd v. FDIC, 22 F.3d 335, 336 (1st Cir. 1994) (interpreting

these statutes as affording the FDIC the "power as receiver to

foreclose on the property of a debtor"); see also 281-300 Joint

Venture v. Onion, 938 F.2d 35, 39 (5th Cir. 1991) (holding that

"the ability of the conservator to foreclose on the property of a

debtor [is] a power that Congress gave to [agencies like the

FDIC] under FIRREA"), cert. denied, 112 S. Ct. 933 (1992); Abbott

Bldg. Corp. v. United States, 951 F.2d 191, 194 (9th Cir. 1991)

(similar). Therefore, in a run-of-the-mill case, a district

court lacks the authority to enjoin the FDIC, acting lawfully as

a receiver, from foreclosing on security that it holds. See

Lloyd, 22 F.3d at 336-37 (holding that district courts lack

jurisdiction to enjoin the FDIC, acting as receiver, from

foreclosing on a debtor's property); Telematics, 967 F.2d at 706

(refusing to enjoin the FDIC from foreclosing on a certificate of

deposit because section 1821(j) "must be accorded its ordinary

11

meaning"); see also Sweeney v. RTC, 16 F.3d 1, 6 (1st Cir. 1994)

(per curiam) (explaining that section 1821(j) bars an injunction

designed to block an imminent nonjudicial foreclosure scheduled

by the RTC); 281-300 Joint Venture, 938 F.2d at 39 (holding that

under section 1821(j) "the courts lack the ability to enjoin

nonjudicial foreclosures that are within the statutory powers" of

the RTC qua receiver).

C

The second query whether the FDIC's power to

foreclose extends to the context of bankruptcy proceedings

requires us to examine appellees' hydra-headed assertion that the

debtor's bankruptcy removes the FDIC's proposed foreclosure here

from the mine-run, and vests the federal courts with injunctive

powers that would be lacking in respect to other FDIC foreclosure

initiatives. Answering this second query is more complicated,

for the statutes defining the authority of the FDIC form only

part of the relevant legal universe; the statutes governing

bankruptcy matters also must be consulted. We devote the next

two sections of this opinion to the task of answering this second

query.

It is not disputed that the three properties on which

the FDIC seeks to foreclose constituted property of the debtor as

of the date of bankruptcy and are thus property of the estate.

See 11 U.S.C. 541(a)(1) (explaining that the bankruptcy "estate

is comprised of . . . all legal or equitable interests of the

debtor in property as of the commencement of the case"). As

12

Sunshine correctly points out, the district court obtained

jurisdiction over those properties by virtue of 28 U.S.C. 1334.

Pursuant to 28 U.S.C. 1334(d), "[t]he district court in which a

case under Title 11 is commenced or is pending shall have

exclusive jurisdiction of all the property, wherever located, of

the debtor as of the commencement of such case, and of property

of the estate." Id.; see also 28 U.S.C. 1334(a) (giving

district court "original and exclusive jurisdiction of all cases

under title 11").

Sunshine argues that this statutory mosaic also infuses

the district court and/or the bankruptcy court with power to

enjoin the FDIC.7 This argument builds on the theory that, as a

general proposition, a bankruptcy court may issue injunctions to

protect its exclusive jurisdiction over estate property. See 11

U.S.C. 105(a) (empowering bankruptcy courts to "issue any

order, process, or judgment that is necessary or appropriate to

carry out the provisions of this title"); see also In re Olympia

Holding Corp., 141 B.R. 443, 446 (Bankr. M.D. Fla. 1992) (relying

on the jurisdictional grant contained in 28 U.S.C. 1334(d) and

the grant of protective powers contained in 11 U.S.C. 105 to

issue an injunction to safeguard estate property). And this

proposition, Sunshine says, must mean that the bankruptcy court

possesses the power to enjoin the FDIC when it is necessary to do

7Despite the fact that the district court issued the
injunction in this instance, the litigants argue the case
primarily in terms of the bankruptcy court's power to enjoin the
FDIC. We agree that, for purposes of this appeal, the district
court and the bankruptcy court can be treated interchangeably.

13

so in order to preserve the assets of the bankruptcy estate.

We do not think that the appellees' argument proves

their point. Rather, it serves merely to highlight the tension

that exists between FIRREA's anti-injunction provision, on one

hand, and the bankruptcy laws, on the other hand. But this

tension does not mean that the statutes are in irreconcilable

conflict. As we explain below, they are not.

The preferred approach to statutory construction

dictates that a reviewing court first determine if the perceived

conflict between two laws is real. See Connecticut Nat'l Bank v.

Germain, 112 S. Ct. 1146, 1149 (1992) (cautioning that courts

confronted by arguably conflicting statutes must give effect to

both, where possible). Here, the perceived conflict is more

apparent than real, for the statutes can be reconciled. The key

to harmonizing them lies with 11 U.S.C. 362.

Section 362 of the Bankruptcy Code is an "automatic

stay" provision. It provides in substance that filing a

bankruptcy petition activates an automatic stay. That applies,

inter alia, to the commencement or continuation of most judicial

actions or proceedings against the debtor to obtain possession of

property of the estate. 11 U.S.C. 362(a)(1),(3). Foreclosure

constitutes an action or proceeding against the debtor within the

purview of this law. Hence, attempts to foreclose come within

the statutory sweep and are banned unless and until the automatic

stay is lifted, see id. 362(d). Thus, no person or entity has

a choate power to foreclose on property belonging to a bankrupt's

14

estate so long as the automatic stay is in place.

We see no basis for exempting the FDIC from the

strictures of this regime when it is acting as a receiver or

conservator.8 Because the automatic stay is exactly what the

name implies "automatic" it operates without the necessity

for judicial intervention. Consequently, the stay's curtailment

of the FDIC's power does not run afoul of FIRREA's anti-

injunction provision, which only prohibits "court . . . action .

. . to restrain or affect the exercise of powers or function of

the [FDIC] as a . . . receiver." 12 U.S.C. 1821(j) (emphasis

supplied). On that basis, we are confident that the automatic

stay does not violate FIRREA's anti-injunction provision because

it arises directly from the operation of a legislative enactment,

not by court order. Accord In re Colonial Realty Co., 980 F.2d

125, 137 (2d Cir. 1992); Gross v. Bell Sav. Bank, 974 F.2d 403,

407 (3d Cir. 1992).

The automatic stay works in tandem with the statutes on

which Sunshine relies. The broad jurisdictional grant of 28

U.S.C. 1334 is designed to centralize proceedings in the

bankruptcy court, and 11 U.S.C. 105 is designed to permit the

court to protect that jurisdictional grant. The automatic stay

8To be sure, 11 U.S.C. 362(b)(4) provides that the
automatic stay does not reach proceedings undertaken to enforce a
"governmental unit's police or regulatory power." But when the
FDIC operates as a receiver or conservator, it does not exercise
"regulatory power" within the meaning of this statute. See

generally Howell v. FDIC, 986 F.2d 569, 574 (1st Cir. 1993)

(distinguishing between FDIC acting in its corporate capacity as
a regulator and in its capacity as a receiver).

15

furthers this policy by preventing different creditors from

bringing different proceedings in different courts, thereby

setting in motion a free-for-all in which opposing interests

maneuver to capture the lion's share of the debtor's assets.

"The stay insures that the debtor's affairs will be centralized,

initially, in a single forum in order to prevent conflicting

judgments from different courts and in order to harmonize all of

the creditors' interests with one another." In re Colonial

Realty, 980 F.2d at 133 (citation omitted) (emphasis supplied).

Nonetheless, the automatic stay does not always operate

in perpetuity. While the stay ensures that most matters related

to the debtor's estate will come under the wing of a single

bankruptcy court in the first instance,9 further provisions of

the same statute permit the bankruptcy court to relax the

automatic stay under enumerated conditions. See 11 U.S.C.

362(d)-(g). Once relief from the stay is granted, an "action or

proceeding against the debtor that was or could have been

commenced before the commencement of the [bankruptcy] case" may

go forward. Id. 362(a). In other words, by granting relief

from the automatic stay the bankruptcy court effectively yields

the exclusive control over the debtor's estate initially accorded

to it by section 1334(d).

With all pieces in place, the assembled doctrinal

9In the interests of accuracy, we note that certain property
is excepted from the operation of the automatic stay. See 11

U.S.C. 362(b). This exception has no relevance for present
purposes.

16

puzzle looks like this: the jurisdictional grant and the

automatic stay work together to centralize nearly all claims

relating to the bankrupt estate in the bankruptcy court. While

the legislatively mandated stay is in place, the FDIC, like any

other creditor, is fully subject to it. If at this point the

FDIC were to ignore the stay and initiate a foreclosure

proceeding, the bankruptcy court would be acting within its

authority to issue an injunction. After all, FIRREA's anti-

injunction provision, 12 U.S.C. 1821(j), only prohibits court

actions restraining FDIC's exercise of its lawful powers or

functions. See 281-300 Joint Venture, 938 F.2d at 39.

Once the bankruptcy court grants the FDIC relief from

the automatic stay, however, the court surrenders the preferred

position that Congress carved out for it. At that juncture,

FIRREA's anti-injunction provision comes into play. Thereafter,

without the automatic stay in place, the bankruptcy court, like

any other court, is prevented from taking "any action . . . to

restrain or affect the exercise of powers or functions of the

[FDIC] as a conservator or receiver." 12 U.S.C. 1812(j). So

viewed, the statutes under consideration do not conflict.

We thus answer the second of our two questions

affirmatively and hold that FIRREA's anti-injunction provision,

12 U.S.C. 1821(j), applies in the bankruptcy milieu. That ends

this phase of our inquiry. In this case, relief from the

automatic stay had been obtained long before the FDIC instituted

foreclosure proceedings, and Sunshine had not appealed.

17

Consequently, the bankruptcy court had surrendered its exclusive

control over the properties and, in the face of FIRREA's anti-

injunction provision, could not then reverse direction and

restrain the FDIC from going forward.10

D

In a related vein, the appellees also suggest that

section 1334(b) gives the bankruptcy court power to grant an

injunction against the FDIC, FIRREA notwithstanding.11

Appellees' reliance on this provision is misplaced.

We need not wax longiloquent. The Supreme Court

rebuffed a strikingly similar interpretation of section 1334(b)

in Board of Governors v. MCorp Financial, Inc., 112 S. Ct. 459

(1991). There, the debtor contended that section 1334(b) gave a

bankruptcy court concurrent jurisdiction that empowered it to

10We are not aware of any instance involving either the FDIC
or the RTC in which a court reinstated the automatic stay after
having granted a party relief from it. We leave for another day
the dichotomous question whether reinstatement of a section
362(a) stay vis-a-vis the FDIC would be possible, and if so,
whether such reinstatement would constitute "court action"
violative of 12 U.S.C. 1821(j). We likewise express no opinion
as to whether judicial implementation of a stay pursuant to
Bankruptcy Rule 8005 might run afoul of section 1821(j).

11The statute provides:

Notwithstanding any Act of Congress that
confers exclusive jurisdiction on a court or
courts other than the district courts, the
district courts shall have original but not
exclusive jurisdiction of all civil
proceedings arising under title 11, or
arising in or related to cases under title
11.

28 U.S.C. 1334(b).

18

enjoin ongoing administrative proceedings of the Federal Reserve

Board, despite a specific statutory provision precluding

injunctions in such circumstances. The Court rejected the

debtor's argument, holding that section 1334(b) "concerns the

allocation of jurisdiction between bankruptcy courts and other

`courts'" and that "an administrative agency such as the Board is

not a `court'." MCorp, 112 S. Ct. at 465. Section 1334(b) is

similarly inapplicable to a nonjudicial foreclosure proceeding

undertaken by the FDIC (which, like the Federal Reserve Board, is

not a "court").12

E

The appellees have one more shot in their sling. They

strive to persuade us that, regardless of FIRREA's anti-

injunction provision, authority to enjoin the FDIC can be found

in the bankruptcy court's general equitable jurisdiction, to

which the FDIC subjected itself by filing proofs of claim and

litigating in the bankruptcy court. For this thesis, appellees

rely almost exclusively on the bankruptcy court's reasoning in In

re Tamposi Family Inv. Properties, 159 B.R. 631 (Bankr. D.N.H.

1993). But the reasoning of the Tamposi court cannot withstand

scrutiny.13

12This case presents a relatively easy question involving an
ill-starred effort to apply section 1334(b) to nonjudicial
proceedings instituted by an administrative agency. We intimate
no opinion regarding that section's applicability vel non to the

FDIC in other settings.

13It is important to note that, although Tamposi's reasoning

is flawed, the result in the case may be defensible. See, e.g.,

In re Parker North Amer. Corp., F.3d , (9th Cir. 1994)

19

There, the debtors brought adversary complaints against

the FDIC under 11 U.S.C. 547(b), seeking to avoid transfers

that had been made to the failed bank less than ninety days

before the debtors declared bankruptcy. See Tamposi, 159 B.R. at

632-33. The FDIC contended that the bankruptcy court lacked

subject matter jurisdiction under 12 U.S.C. 1821(d)(13)(D), a

FIRREA provision stating that "no court shall have jurisdiction

over . . . [a]ny claim or action for payment from . . . the

assets of any depository institution for which the [FDIC] has

been appointed receiver . . . ." The Tamposi court rejected the

FDIC's contention because "by filing a proof of claim in a

bankruptcy proceeding, the creditor/claimant submits itself to

the process of allowance and disallowance of claims which is at

the heart of a bankruptcy court's subject matter jurisdiction."

Tamposi, 159 B.R. at 634.

The Tamposi court's reasoning leaves much to be

desired. In the first place, the bankruptcy court, 159 B.R. at

636, misread our opinion in Marquis v. FDIC, 965 F.2d 1148 (1st

Cir. 1992). In Marquis, we held that federal courts retain a

modicum of subject matter jurisdiction over actions pending

against failed financial institutions even after the FDIC has

been appointed as receiver, notwithstanding the jurisdictional

bar of 12 U.S.C. 1821(d)(13)(D) (a FIRREA accouterment

providing that "no court shall have jurisdiction over . . . any

[1994 WL 192456, at *9] (holding that section 1821(d)(13)(D) does
not bar a bankruptcy court from hearing a preference action
against the RTC).

20

claim or action for payment from, or any action seeking a

determination of rights with respect to, the assets of any

depository institution for which the [FDIC] has been appointed

receiver"). See id. at 1155. We arrived at this holding as a

matter of statutory interpretation, stressing other language in

FIRREA that addresses claimants' rights "to continue any action

which was filed before appointment of a receiver," 12 U.S.C.

1821(d)(5)(F)(ii). Moreover, we specifically limited the reach

of the Marquis holding to actions pending in a federal court

prior to the FDIC's appointment as receiver or conservator. See

id. at 1154.

The Tamposi court ignored this limitation. Instead, it

erroneously asserted that whether proceedings were pending at the

time of the FDIC's appointment "is irrelevant under the logic of

Marquis." Tamposi, 159 B.R. at 636. This assertion is incorrect:

the holding in Marquis cannot be transplanted root and branch to

a wider class of cases. Specifically, the holding is inapposite

in the Tamposi context and it is similarly inapposite here.

The second problem with the reasoning of Tamposi is

that the opinion places too great a premium on a trio of Supreme

Court cases not involving the FDIC. Each of these cases stands

for the somewhat mundane proposition that "by filing a claim

against a bankruptcy estate the creditor triggers the process of

allowance and disallowance of claims, thereby subjecting himself

to the bankruptcy court's equitable powers." Langenkamp v. Culp,

498 U.S. 42, 44 (1990) (citation and internal quotation marks

21

omitted); accord Granfinanciera, S.A. v. Nordberg, 492 U.S. 33,

59 n.14 (1989) (noting that "by submitting a claim against the

bankruptcy estate, creditors subject themselves to the court's

equitable power to disallow those claims"); Katchen v. Landy, 382

U.S. 323, 329-30 (1966) (similar). We do not doubt that this

proposition pertains to the FDIC but staking the farm on it for

present purposes begs the question of what equitable powers the

bankruptcy court possesses vis-a-vis particular litigants.

Once the question is properly framed, the FDIC's

involvement makes a dispositive difference. The bankruptcy court

is a creature of statute, and Sunshine has not suggested that it

is beyond Congress's lawful powers to limit the remedies

available to that court or to remove selected matters from its

jurisdiction. Here, Congress exercised that very power, limiting

the authority of all courts the bankruptcy court included to

enjoin the FDIC. The general proposition that filing a proof of

claim subjects a party to the bankruptcy court's equitable

jurisdiction cannot be read in isolation, but, rather, must be

read in conjunction with the specific statutory language,

contained in section 1821(j), that Congress subsequently saw fit

to write. Cf. Vimar Seguros y Reaseguros, S.A. v. M/V Sky

Reefer, F.3d , (1st Cir. 1994) [No. 93-2179, slip op.

at 12] (explaining that a specific, later-enacted statute

"ordinarily controls the general") (collecting cases); Watson v.

Fraternal Order of Eagles, 915 F.2d 235, 240 (6th Cir. 1990)

(same).

22

Finally, and relatedly, to accept the Tamposi court's

reasoning would be to stand FIRREA on its ear. After all, once a

party declares bankruptcy, a creditor's principal recourse to

money owed is by filing proofs of claim in the bankruptcy court.

Under the Tamposi regime, when the FDIC as receiver or

conservator is also a creditor of a bankrupt, the FDIC must

either elect to forgo its claim or to waive its statutory

protections. In the most auspicious of circumstances, we would

be reluctant to read section 1821(j) as constructing so perverse

a paradigm.

Here, the circumstances are anything but auspicious,

for the statute is prefaced by the phrase "Except as otherwise

provided in this section . . . ." This language serves to

identify those occasions on which the anti-injunction provision

lacks force. See, e.g., 1821(c)(7), 1821(c)(8)(C). When, as

now, a law itself contains an enumeration of applicable

exemptions, the maxim "expressio unius est exclusio alaterius"

ordinarily applies. Under that maxim, a legislature's

affirmative description of certain powers or exemptions implies

denial of nondescribed powers or exemptions. See Continental

Cas. Co. v. United States, 314 U.S. 527, 533 (1942); Park Motor

Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980);

see generally 2A Norman J. Singer, Sutherland Stat. Const.

47.23, at 216-17 (5th ed. 1992). So it is here.

IV.

Conclusion

23

We need go no further. There is no conflict between

the statutory provisions defining the bankruptcy courts'

jurisdiction and the FDIC's powers while the automatic stay is in

place. When and if a bankruptcy court grants relief from the

stay for a particular purpose, however, the FDIC's powers, which

in this regard are spelled out by FIRREA's recent, clear, and

specific language, come to the fore and trump the residual powers

of the courts. Had the court below correctly understood the

interface between the relevant statutory schemes, it would have

realized that, because the automatic stay had been dissolved, the

appellees were requesting relief of a kind that, 18 U.S.C.

1821(j) considered, exceeded the district court's authority.

Consequently, the injunction issued by the lower court may not

stand.

Reversed.

24