81 P.3d 512 (2003)
The STATE of Nevada DIVISION OF CHILD AND FAMILY SERVICES, DEPARTMENT OF HUMAN RESOURCES, Petitioner,
v.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, In and For the COUNTY OF CLARK, and the Honorable Gerald W. Hardcastle, District Judge, Family Court Division, Respondents, and
A.M.S., Real Party in Interest.
No. 40269.
Supreme Court of Nevada.
December 30, 2003.
Brian Sandoval, Attorney General, and Brigid J. Duffy, Deputy Attorney General, Carson City, for Petitioner.
*513 Clark County Legal Services Program, Inc., and Stacy L. Sallerson, Las Vegas, for Real Party in Interest.
Before the Court En Banc.

OPINION
AGOSTI, C.J.
This original petition for a writ of mandamus or prohibition filed by the Division of Child and Family Services (DCFS) challenges a family court order granting the motion of A.M.S., a minor child, to compel the release of the names and addresses of A.M.S.'s siblings' adoptive and natural parents. A.M.S. wants to effect service on them as she pursues a petition to permit her to visit with her siblings. For the following reasons, we deny DCFS's petition.
In April 1998, A.M.S. and her three younger sisters became wards of the State of Nevada, and custody of all four was awarded to DCFS. Because their mother's drug addiction prevented her from fulfilling her maternal obligations, A.M.S., then nine, had assumed the role of mother to the three younger girls, then five years, four years and an infant. As a result, A.M.S. felt and continues to feel a strong bond with her siblings. Although the girls were initially placed in foster care together, they were subsequently placed into separate homes. The mother's parental rights were terminated in July 2000. In September 2000, during a permanency review hearing, the family court was advised that adoption was a viable option for two of the girls. The family court ordered that a visitation plan be established before final adoption and that the girls be given unlimited unsupervised visitation. The girls' adult caregivers, including DCFS, failed to comply with this order.
The youngest sister was adopted on November 13, 2001. Another sister was adopted the next day by a different family. The order granting sibling visitation was not incorporated into the adoption decrees. A third sister was reunited with her biological father on September 1, 2000, and remains with him. The state's wardship of the two adopted girls was terminated on November 26, 2001, and the wardship of the sister who was reunited with her biological father was terminated on July 10, 2001. A.M.S., now approximately thirteen years old, is the only child remaining a ward of the state.
In January 2002, the family court appointed Clark County Legal Services' Children's Advocacy Project (CAP) to address A.M.S.'s request for sibling visitation and to address her permanency planning. A.M.S., through her counsel, first tried to obtain the names and addresses of the adoptive and natural parents of her sisters from DCFS in order to reestablish communication. DCFS refused to disclose the information.
On August 13, 2002, the family court granted A.M.S.'s motion to compel the release of the addresses for the limited purpose of serving the siblings' legal guardians with a petition for sibling visitation. The motion requested that the information only be released to A.M.S.'s attorney, not to the child herself without the legal guardians' permission. The family court denied DCFS's motion to reconsider. DCFS now petitions this court for a writ of mandamus or prohibition to arrest the family court's order granting the motion to compel.
DCFS maintains that because the child never filed a petition for sibling visitation under NRS 125C.050(7)[1] before the termination of parental rights, her right to seek such visitation has expired. DCFS also contends that NRS 127.171 cuts off visitation *514 rights by the adoptee's natural relatives if visitation was not previously granted under NRS 125C.050.
DCFS's argument is specious. First of all, the child is a minor and a ward of the state. DCFS has custody of her. If we were to concur with DCFS's argument, no minor sibling in DCFS's custody would ever be granted sibling visitation unless DCFS petitioned, on behalf of the siblings, for visitation before the termination of parental rights. DCFS, as the children's only voice, could, for its own reasons, which may be inconsistent with its statutory mandate, deny them the window of opportunity to maintain ties with their siblings by simply failing to act when the window is open, and then claiming that, since the children did not request visitation before parental rights were terminated, their opportunity to do so is foreclosed.[2]
Furthermore, DCFS ignores the fact that the family court determined that sibling visitation was in the children's best interests and, accordingly, ordered that a sibling visitation plan be in place before adoptions were finalized. While DCFS argues that the order was invalid because it occurred after parental rights had been terminated, we observe that all orders are presumptively valid on their face.[3] It was not in DCFS's discretion to unilaterally decide whether or not to comply with the order.
DCFS next argues that the family court lacked jurisdiction to order the release of information for purposes of effecting service.[4] DCFS contends that NRS 432B.280[5] and NAC 127.200[6] mandate the confidentiality of adoption records unless an exception for disclosure is allowed under NRS 432B.290.[7]
We conclude that the family court acted well within its jurisdiction in ordering DCFS to disclose the information for the sole purpose of effecting service. Although the information sought is confidential, there are two exceptions by which the family court may properly order the disclosure of such information. NRS 432B.290(1)(e) and (g) allow the family court to make the information available if it is necessary to determine an issue, or if it is sought by the child's attorney or guardian ad litem. Here, the information is necessary to bring the issue of sibling visitation before the family court, and by the family court's order, it is only to be disclosed to A.M.S.'s attorney, and not to A.M.S. herself. Furthermore, A.M.S. seeks information from her own abuse and neglect case, which includes the information regarding the other girls' placements, and the family court retains jurisdiction over A.M.S. under NRS *515 3.223. Since visitation was already determined to be in the sisters' best interests, it was DCFS's duty to bring this order to the adoption court's attention, which DCFS failed to do. The child should not have to pursue a separate action before the adoption court to access information from those files because she seeks information from her own case which falls under two of the confidentiality exceptions, and because her predicament was caused by DCFS's failure to bring the order to the adoption court's attention.
DCFS next argues that the family court abused its discretion because its order compelling the disclosure of the legal guardians' names and addresses contravenes public policy. DCFS argues that forcing them to disclose that information would have a chilling effect on adoptions because adoptive families could not be secure in their right to privacy. DCFS also argues that allowing sibling visitation now, in the absence of such an order incorporated into the adoption decree, would undermine the children's permanency and stability in their new homes.
We conclude that the family court did not manifestly abuse its discretion.[8] First, we note that the information sought will merely allow the child to serve a petition for sibling visitation so that a hearing may be held to determine whether visitation would be in the best interests of all of the children. Second, the family court adequately protected the privacy interest of the legal guardians by ordering the information disclosed only to the child's attorney, not to the child herself, and solely for effecting service. Third, and most importantly, we observe that DCFS's responsibility to all of the children while they were in DCFS's custody, and to A.M.S., who remains in DCFS's custody, is not merely permanency planning and placement; DCFS is responsible for acting in the best interests of the children.[9] A.M.S. was a mother figure for the other girls and the siblings' bond was very close. The best interests of the children before adoption were that they be allowed to maintain that bond through regular contact.[10] The family court's order of September 2000 specifically stated that a visitation plan be established before final adoptions took place. DCFS, as the minor girl's custodian, has a continuing obligation to act in her best interests. However, DCFS has acted exactly to the contrary by myopically promoting the adoptive families' privacy rights at the expense of the child's right of association with the only family that she has. The tragedy of DCFS's conduct is that it places all of these girls in the position of knowing that they have sisters, but not being able to locate them until the girls reach the age of majority,[11] and denying them that special bond of sisterhood.
Accordingly, we deny the original petition challenging the family court's order granting A.M.S.'s motion to compel release of the names and addresses of her siblings' adoptive and biological parents.
SHEARING, ROSE, LEAVITT, BECKER, MAUPIN and GIBBONS, JJ., concur.
NOTES
[1] NRS 125C.050(7) provides:

If the parental rights of either or both natural parents of a child are relinquished or terminated, and the child is placed in the custody of a public agency or a private agency licensed to place children in homes, the district court in the county in which the child resides may grant to the great-grandparents and grandparents of the child and to other children of either parent of the child a reasonable right to visit the child during his minority if a petition therefor is filed with the court before the date on which the parental rights are relinquished or terminated. In determining whether to grant this right to a party seeking visitation, the court must find, by a preponderance of the evidence, that the visits would be in the best interests of the child in light of the considerations set forth in paragraphs (a) to (i), inclusive, of subsection 6.
[2] We note that during oral argument, DCFS insisted that counsel had been appointed for A.M.S., so she had representation to seek visitation. However, counsel was not appointed for her until January 2002, nearly two years after parental rights to the girls had been terminated.
[3] See Turner v. Dewco Services, Inc., 87 Nev. 14, 17, 479 P.2d 462, 465 (1971) (holding that the presumption of validity attached to the referee's order).
[4] A writ of prohibition may issue to arrest a district court's proceedings if the proceedings exceed the court's jurisdiction. NRS 34.320.
[5] NRS 432B.280 provides:

1. Reports made pursuant to this chapter, as well as all records concerning these reports and investigations thereof, are confidential.
2. Any person, law enforcement agency or public agency, institution or facility who willfully releases data or information concerning such reports and investigations, except:
(a) Pursuant to a criminal prosecution relating to the abuse or neglect of a child;
(b) As otherwise authorized or required pursuant to NRS 432B.290; or
(c) As otherwise required pursuant to NRS 432B.513,
is guilty of a misdemeanor.
[6] NAC 127.200(3) provides that "[t]he documentation required pursuant to this section is confidential and must be protected from unauthorized use."
[7] NRS 432B.290 provides, in relevant part:

1. Except as otherwise provided in subsections 2, 5 and 6 and NRS 432B.513, data or information concerning reports and investigations thereof made pursuant to this chapter may be made available only to:
....
(e) A court, for in camera inspection only, unless the court determines that public disclosure of the information is necessary for the determination of an issue before it;
....
(g) The attorney and the guardian ad litem of the child ....
[8] A writ of mandamus may issue to control an arbitrary or capricious exercise of discretion. Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981).
[9] See NRS 232.400 (providing, in pertinent part, that DCFS's purposes and duties include "[p]rovid[ing] a comprehensive state system for the coordination and provision of services to children and families who need assistance relating to juvenile justice and the care, welfare and mental health of children"). While this statute does not use the term "best interests of the child," providing for the care, welfare and mental health of children requires a determination of a course of conduct that would be in the children's best interest. Also, when read in context with NRS Chapter 432B and NRS Chapter 127, which provide that the termination of parental rights and adoptions can only be done upon a finding that such action would be in the child's best interest, NRS 232.400 shows that DCFS's duties include ascertaining and furthering goals that are in the child's best interest.
[10] We make no determination as to whether visitation is still in all of the girls' best interests. That is a factual determination that must be made by the family court after presentation of evidence.
[11] See NRS 127.007.